Print

# CASE INFORMATION

## CV-20-932243 HENDERSON ROAD RESTAURANT SYSTEMS, INC., ET AL. vs. ZURICH AMERICAN INSURANCE COMPANY

### Docket Information

| Filing Date | Docket Party | Docket Type | Docket Description | View Image |
|---|---|---|---|---|
| 06/04/2020 | N/A | SR | SCHEDULE ATTORNEY NOTICE. NOTICE GENERATED FOR ZURICH AMERICAN INSURANCE COMPANY 06/04/2020 17:02:27 | |
| 06/04/2020 | N/A | SR | SCHEDULE ATTORNEY NOTICE. NOTICE GENERATED FOR SONKIN/RICK/D 06/04/2020 17:02:27 | |
| 06/04/2020 | N/A | SR | SCHEDULE ATTORNEY NOTICE. NOTICE GENERATED FOR KORAN/SEAN/ 06/04/2020 17:02:27 | |
| 06/04/2020 | N/A | SR | SCHEDULE ATTORNEY NOTICE. NOTICE GENERATED FOR KOBERNA/MARK/R 06/04/2020 17:02:27 | |
| 06/04/2020 | N/A | SC | CMC BY PHONE SET FOR 07/02/2020 AT 10:30 AM. FAILURE OF THE PLAINTIFF TO APPEAR FOR THIS CMC WILL RESULT IN A DISMISSAL WITHOUT PREJUDICE. ALL PARTIES COUNSELS ARE TO CALL THE CONFERENCE CALL NUMBER 978-990-5000 AND ENTER ACCESS CODE 701774# AT THE SCHEDULED DATE AND TIME. COUNSEL FOR PLAINTIFF(S) SHALL INFORM ALL OPPOSING COUNSEL AND UNREPRESENTED PARTIES OF THE DATE, TIME AND CONFERENCE CALL DIRECTIONS. CASE MANAGEMENT CONFERENCE (CMC) WILL BE CONDUCTED BY TELEPHONE. ANY ATTORNEY OR UNREPRESENTED PARTY WHO IS NOT AVAILABLE WILL BE DEEMED TO HAVE WAIVED HIS/HER PARTICIPATION AND TO HAVE ACCEPTED THE CASE SCHEDULING ORDER ESTABLISHED BY THE COURT. PARTIES SHOULD NOT WAIT FOR THE CMC BEFORE BEGINNING TO CONDUCT DISCOVERY. FAILURE TO APPEAR AT ANY COURT SCHEDULED EVENT IN THE FUTURE MAY RESULT IN DISMISSAL OF PLAINTIFF'S CLAIMS FOR WANT OF PROSECUTION OR JUDGMENT RENDERED AGAINST DEFENDANT. SO ORDERED. | |
| 06/03/2020 | N/A | SR | USPS RECEIPT NO. 41696903 DELIVERED BY USPS 05/11/2020 ZURICH AMERICAN INSURANCE COMPANY PROCESSED BY COC 06/03/2020. | |
| 05/01/2020 | N/A | SR | SUMMONS E-FILE COPY COST | |
| 05/01/2020 | D1 | CS | WRIT FEE | |
| 05/01/2020 | D1 | SR | SUMS COMPLAINT(41696903) SENT BY CERTIFIED MAIL. TO: ZURICH AMERICAN INSURANCE COMPANY 1299 ZURICH WAY SCHAUMBURG, IL 60196 | 📄 |
| 04/30/2020 | N/A | SF | JUDGE CASSANDRA COLLIER-WILLIAMS ASSIGNED (RANDOM) | |
| 04/30/2020 | P1 | SF | LEGAL RESEARCH | |
| 04/30/2020 | P1 | SF | LEGAL NEWS | |
| 04/30/2020 | P1 | SF | LEGAL AID | |
| 04/30/2020 | P1 | SF | COURT SPECIAL PROJECTS FUND | |
| 04/30/2020 | P1 | SF | COMPUTER FEE | |
| 04/30/2020 | P1 | SF | CLERK'S FEE | |
| 04/30/2020 | P1 | SF | DEPOSIT AMOUNT PAID MARK R KOBERNA | |
| 04/30/2020 | N/A | SF | CASE FILED: COMPLAINT | 📄 |

Only the official court records available from the Cuyahoga County Clerk of Courts, available in person, should be relied upon as accurate and current.
Website Questions or Comments.
Copyright © 2020 PROWARE. All Rights Reserved. 1.1.244

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV20932243 | D1 CM | 41696903 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

HENDERSON ROAD RESTAURANT SYSTEMS, **PLAINTIFF**
          INC., ET AL.
          **VS**
    ZURICH AMERICAN INSURANCE COMPANY   **DEFENDANT**

# SUMMONS

ZURICH AMERICAN INSURANCE COMPANY
1299 ZURICH WAY
SCHAUMBURG IL 60196

You have been named defendant in a sums
complaint (copy attached hereto) filed in Cuyahoga
County Court of Common Pleas, Cuyahoga County
Justice Center, Cleveland, Ohio 44113, by the
plaintiff named herein.

You are hereby summoned and required to answer
the complaint within 28 days after service of this
summons upon you, exclusive of the day of service.

**Said answer is required to be served on:**



Plaintiff's Attorney

RICK D SONKIN
3401 ENTERPRISE PKWY, SUITE 400

CLEVELAND, OH 44122-0000

Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

**Case has been assigned to Judge:**

CASSANDRA COLLIER-WILLIAMS
**Do not contact judge. Judge's name is given for
attorney's reference only.**

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

| DATE SENT | |
|---|---|
| May 1, 2020 | |

By _____
        Deputy

COMPLAINT FILED   04/30/2020



**POSTAL SERVICE**™

Date Produced: 05/18/2020

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3540 2628 31. Our records indicate that this item was delivered on 05/11/2020 at 06:04 a.m. in SCHAUMBURG, IL 60194. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**April 30, 2020 14:27**

By: MARK R. KOBERNA 0038985

Confirmation Nbr. 1991748

HENDERSON ROAD RESTAURANT SYSTEMS, INC.,         CV 20 932243
ET AL.

      vs.

ZURICH AMERICAN INSURANCE COMPANY          **Judge:**  CASSANDRA COLLIER-WILLIAMS

**Pages Filed:**  23

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| HENDERSON ROAD RESTAURANT SYSTEMS, INC. DBA HYDE PARK GRILLE, 21945 Chagrin Boulevard Beachwood, Ohio 44122 | ) ) ) ) ) |
| | ) |
| and | ) ) |
| | ) |
| COVENTRY RESTAURANT SYSTEMS, INC. DBA HYDE PARK CHOP HOUSE, 21945 Chagrin Boulevard Beachwood, Ohio 44122 | ) ) ) ) ) ) |
| | ) |
| and | ) ) |
| | ) |
| CHAGRIN RESTAURANTS LLC DBA HYDE PARK PRIME STEAK HOUSE 21945 Chagrin Boulevard Beachwood, Ohio 44122 | ) ) ) ) ) ) |
| | ) |
| and | ) ) |
| | ) |
| JR PARK LLC DBA HYDE PARK PRIME STEAK HOUSE 21945 Chagrin Boulevard Beachwood, Ohio 44122 | ) ) ) ) ) |
| | ) |
| and | ) ) |
| | ) |
| HP CAP LLC DBA HYDE PARK PRIME STEAK HOUSE 21945 Chagrin Boulevard Beachwood, Ohio 44122 | ) ) ) ) ) |
| | ) |
| and | ) ) |
| | ) |
| NSHP, LLC DBA HYDE PARK PRIME STEAKHOUSE 21945 Chagrin Boulevard Beachwood, Ohio 44122 | ) ) ) ) ) |

CASE NO.:

JUDGE:

**COMPLAINT**

**(Jury Demand Endorsed Hereon)**

|                                                                                          |     |
|------------------------------------------------------------------------------------------|-----|
| and                                                                                      | )   |
|                                                                                          | )   |
| HPD RESTAURANT SYSTEMS INC. DBA HYDE PARK PRIME STEAKHOUSE 21945 Chagrin Boulevard Beachwood, Ohio 44122 | )   |
|                                                                                          | )   |
| and                                                                                      | )   |
|                                                                                          | )   |
| 457 HIGH STREET DEVELOPMENT LLC 21945 Chagrin Boulevard Beachwood, Ohio 44122            | )   |
|                                                                                          | )   |
| and                                                                                      | )   |
|                                                                                          | )   |
| RJ MORELAND HILLS, LLC, 21945 Chagrin Boulevard Beachwood, Ohio 44122                    | )   |
|                                                                                          | )   |
| and                                                                                      | )   |
|                                                                                          | )   |
| CAP RESTAURANT DEVELOPMENT LLC 21945 Chagrin Boulevard Beachwood, Ohio 44122             | )   |
|                                                                                          | )   |
| and                                                                                      | )   |
|                                                                                          | )   |
| NORTHVILLE DEVELOPMENT, LLC, 21945 Chagrin Boulevard Beachwood, Ohio 44122               | )   |
|                                                                                          | )   |
| Plaintiffs,                                                                              | )   |
|                                                                                          | )   |
| vs.                                                                                      | )   |
|                                                                                          | )   |
| ZURICH AMERICAN INSURANCE COMPANY, 1299 Zurich Way Schaumburg, Illinois 60196-1056       | )   |
|                                                                                          | )   |
| Defendant.                                                                               | )   |

For their Complaint against Defendant Zurich American Insurance Company ("Zurich"), Plaintiffs Henderson Road Restaurant Systems, Inc. dba Hyde Park Grille, Coventry Restaurant Systems, Inc., dba Hyde Park Chop House, Chagrin Restaurants LLC dba Hyde Park Prime Steak House, JR Park LLC dba Hyde Park Prime Steak House, HP CAP LLC dba Hyde Park Prime Steakhouse, NSHP, LLC dba Hyde Park Prime Steakhouse, HPD Restaurant Systems Inc. dba Hyde Park Prime Steakhouse, 457 High Street Development LLC, CAP Restaurant Development LLC, RJ Moreland Hills, LLC, and Northville Development, LLC (collectively, "Plaintiffs"") state as follows:

## PARTIES AND VENUE

1. Plaintiffs Henderson Road Restaurant Systems, Inc. dba Hyde Park Grille, Coventry Restaurant Systems, Inc., dba Hyde Park Chop House, Chagrin Restaurants LLC dba Hyde Park Prime Steak House, JR Park LLC dba Hyde Park Prime Steak House, HP CAP LLC dba Hyde Park Prime Steakhouse, NSHP, LLC dba Hyde Park Prime Steakhouse, HPD Restaurant Systems Inc. dba Hyde Park Prime Steakhouse, 457 High Street Development LLC, CAP Restaurant Development LLC, RJ Moreland Hills, LLC, and Northville Development, LLC are all affiliates of Hyde Park Restaurant Group, which operate fine dining restaurants in Ohio, Pennsylvania, Michigan, Indiana and Florida as part of the Hyde Park Restaurant Group at the following locations: 26300 Chagrin Boulevard, Beachwood, Ohio 44122; 123 West Prospect Avenue, Cleveland, Ohio 44115; 21 Main Street, Westlake, Ohio 44145; 4073 Medina Road, Akron, Ohio 44333; 6360 Frantz Road, Dublin, Ohio 43017; 1615 Old Henderson Road, Upper Arlington, Ohio 43220; 569 North High Street, Columbus, Ohio 43215; 570 North High Street, Columbus, Ohio 43215; 34105 Chagrin Boulevard, Moreland Hills, Ohio 44022; 87 West Street, Chagrin Falls, Ohio 44022; 201 South Old Woodward Avenue, Birmingham, Michigan 48009; 17107 Haggerty Road, Northville, Michigan 48168; 35 South Lemon Avenue, Sarasota, Florida

34236; 100 North Atlantic Avenue, Daytona Beach, Florida 32118; 51 North Illinois Street Indianapolis, Indiana 46204; and 247 North Shore Drive, Pittsburgh, Pennsylvania 15212; (collectively, the "Insured Locations").

2.      Defendant Zurich is an insurance company transacting business in the State of Ohio.

3.      Venue is proper in this Court because, among other things, Zurich issued a policy of insurance to Plaintiffs in this County and because all or part of Plaintiffs' claims for relief arose in this County.

## BACKGROUND

### A.      Business Interruption Insurance Coverage and COVID-19.

4.      Business interruption insurance (also known as "business income insurance" or "BI insurance") is a type of insurance that covers the loss of income that a business suffers after certain fortuitous events or disasters.  Property casualty insurance differs from BI insurance in that property casualty insurance generally only covers physical loss or physical damage to specific "covered property," typically structures and personal property identified in the policy, while BI insurance covers profits that would have been earned by the business but for the fact that it was required to suspend business operations.

5.      Business interruption coverage can be added onto a business' property insurance coverage, in which case it often only applies in the event of physical loss of or physical damage to specific "covered property." Or, business interruption insurance may be sold by the insurance company as part of a comprehensive package policy, such as business owner's policy, or as a separate endorsement.  In these cases, business interruption coverage often does not depend upon physical loss of or damage to specific "covered property." In some cases, the policy does not even

define the nature or type of "loss" or "damage" which must be incurred, or the type or nature of "property" that must be lost or damaged in order for coverage to exist under the policy.

6.      Broadly speaking, business owners that purchase business interruption coverage have a reasonable expectation that the coverage would apply if they are forced to suspend business operations as a result of an unforeseen, fortuitous event, such as a forced government shutdown of their business as a result of a pandemic (e.g., COVID-19) or other large-scale disaster. Indeed, it is hard to imagine a more unforeseen, fortuitous event than the government orders shuttering restaurants and bars throughout virtually the entire country as a result of the COVID-19 pandemic. After faithfully paying high premiums for business interruption coverage for years, owners of restaurants and bars forced to close their businesses as a result of government ordered shutdowns have a reasonable expectation that this coverage would apply and protect them in such circumstances.

7.      Nonetheless, even though many business interruption policies expressly cover such an event and/or could reasonably be interpreted as providing such coverage, insurance companies have routinely and universally denied claims submitted by businesses for business interruption coverage during the COVID-19 public health crisis, falsely asserting in many cases that no coverage exists unless there is physical damage to tangible property at the insured location (e.g., the structure of the building in which the business operates or related personal property) and/or that the loss is excluded in the event of a pandemic such as COVID-19. *See* Wall Street Journal, *Pressure Mounts on Insurance Companies to Pay Out for Coronavirus* (Mar. 30, 2020), https://www.wsj.com/articles/pressure-mounts-on-insurance-companies-to-pay-out-for-coronavirus-11585573938 (accessed Apr. 29, 2020).      To the contrary, in many cases, the applicable policy provisions do not require physical damage to any specific, tangible property, and

in many cases, the exclusions relied upon by the insurer are not applicable and/or could be reasonably construed as not being applicable.

8. On Friday, April 10, 2020, President Trump stated during his coronavirus briefing at the White House that "he would like to see insurance companies pay" business interruption claims resulting from the COVID-19 pandemic "if they need to pay" pursuant to the terms of the policies they issued. President Trump confirmed that many companies have "been paying a lot of money for a lot of years for the privilege of having [business interruption coverage]. . .And then when they finally need it, the insurance company says, 'We're not going to give it.' We can't let that happen." MarketWatch, *Insurers face 'uh-oh moment' as Trump says some business-interruption policies should cover coronavirus claims* (Apr. 13, 2020), https://www.marketwatch.com/story/insurers-face-uh-oh-moment-as-trump-says-some-business-interruption-policies-should-cover-coronavirus-claims-2020-04-13 (accessed Apr. 29, 2020).

9. Under Ohio law, insurance policies are generally interpreted by applying rules of construction and interpretation applicable to basic contract law. *City of Sharonville v. Am. Employers Ins. Co.*, 109 Ohio St.3d 186, 187, 846 N.E.2d 843 (2006). (Emphasis added.) "Language in a contract of insurance reasonably susceptible of more than one meaning will be **construed liberally in favor of the insured** and against the insurer." *Faruque v. Provident Life & Accidental Ins. Co.*, 31 Ohio St.3d 34, 508 N.E.2d 949 (1987), syllabus. Ambiguous language in an insurance policy must be **strictly construed against the insurer**. *GenCorp Inc. v. Am. Intern. Underwriters*, 178 F.3d 804, 818 (6th Cir.1999). As to exclusionary language in insurance policies, such language must be clear and specific and a general presumption arises to the effect that that which is not clearly excluded from operation of such contract is included in the operation thereof. *King v. Nationwide Ins. Co.*, 35 Ohio St. 3d 208, 214, 519 N.E.2d 1380 (1988).

**B.** **The Zurich Policy.**

10.     On or about November 12, 2019, Zurich issued Commercial Insurance Policy No. CPO 6220911-06 (the "Policy") to Plaintiffs. Each of the Plaintiffs in this action is a named insured under the Policy. A true and accurate copy of the Policy's Business Income Coverage Form is attached hereto as Exhibit A. A full copy of the Policy is not attached as it is too lengthy to append as an exhibit. Zurich has a full copy of the Policy containing the terms, conditions, and exclusions it drafted and issued.

11.     For many years, Plaintiffs faithfully paid premiums to Zurich to specifically pay for business income coverage at each of the Insured Locations.

12.     The Policy provides Business Income Coverage (the "BI Coverage") as follows: We will pay for the actual loss of **"business income"** you sustain due to the necessary **"suspension"** of your **"operations"** during the **"period of restoration"**. The **"suspension"** must be caused by direct physical loss of or damage to property at a **"premises"** at which a Limit of Insurance is shown on the Declarations for Business Income. The loss or damage must be directly caused by a **"covered cause of loss."**

13.     The Policy's BI Coverage also provides additional Civil Authority coverage as follows: We will pay for the actual loss of **"business income"** you sustain for up to the number of days shown on the Declarations for Civil Authority resulting from the necessary **"suspension"**, or delay in the start, of your **"operations"** if the **"suspension"** or delay is caused by order of civil authority that prohibits access to the **"premises"** or **"reported unscheduled premises"**. That order must result from a civil authority's response to direct physical loss of or damage to property located within one mile from the **"premises"** or **"reported unscheduled premises"** which sustains a **"business income"** loss. The loss or damage must be directly caused by a **"covered cause of loss"**.

14.     The terms and phrases "physical loss of," "damage to" and "property" as used in the BI Coverage are not defined in the Policy. The BI Coverage contains no requirement that the buildings, structures and/or personal property or that any tangible or "covered property" at the Insured Locations sustain actual physical loss or physical damage.

15.     The specific phrase "physical loss of or damage to property" found in the Policy and similar phrases have been found by courts across the country (including Ohio) to *not* require the existence of actual physical damage to tangible property at an insured's premises and/or have been found to be ambiguous. *See, e.g., Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399 (1st Cir. 2009)(and cases cited therein)(allegation that an unwanted odor permeated building and resulted in a loss of use of the building are reasonably susceptible to an interpretation that "physical injury" to property has been claimed); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, D.N.J. No. 2:12-cv-04418, 2014 U.S. Dist. LEXIS 165232 (Nov. 25, 2014)(and cases cited therein)(ammonia discharge inflicted "direct physical loss of or damage to" packaging facility even in the absence of any structural or physical damage to facility itself); *W. Fire Ins. Co. v. First Presbyterian Church,* 165 Colo. 34, 437 P.2d 52 (Colo. 1968)(dismissing the concept that physical damage could only occur if "some tangible injury to the physical structure itself could be detected"); *Kravitz Delicatessen v. Assurance Company of Am.*, Mahoning C.P. No. 13CV712, 2013 Ohio Misc. LEXIS 20011 (Oct. 22, 2013)(denying insurer's motion for summary judgment on business interruption claim where deli owner was denied access to its business due to closure of building resulting from sulfur-like smell in building); *Matzner v. Seaco Ins. Co.*, Mass.Super. No. 96-0498-B, 1988 Mass. Super. LEXIS 407 (Aug. 26, 1998) (and cases cited therein)(finding the phrase "direct physical loss or damage" to be ambiguous, and interpreting it to include a loss of use resulting from contamination by carbon monoxide).

16.     The Policy provides that "words or phrases that are not defined are intended to have their ordinary and common meaning. Disputes concerning the meaning of words or phrases will be resolved using the most recently published version of <u>Webster's Unabridged Dictionary</u>" ("Webster's Dictionary").

17.     Webster's Dictionary defines "physical" as follows: "of or pertaining to that which is material."

18.     Webster's Dictionary defines "loss" as follows: "detriment, disadvantage or deprivation from failure to keep, have or get; something that is lost * * * the state of being deprived of or being without something one has had."

19.     Webster's Dictionary defines "damage" as follows: "injury or harm that reduces value or usefulness."

20.     Webster's Dictionary defines "property" as including intangible property (e.g., right to use or occupy land pursuant to a lease or otherwise): "that which a person owns; the possession or possessions of a particular owner; goods, land, etc. considered as possessions; a piece of land or real estate; *ownership, right of possession, enjoyment or disposal of anything,* esp. of something tangible; something at the disposal of a person." (Emphasis added.)

21.     The Policy defines "covered cause of loss" as follows: "a fortuitous cause or event, not otherwise excluded, which actually occurs during this policy period."

## C.     The Government Orders and Plaintiffs' Business Interruption Claim,

22.     Plaintiffs' Ohio restaurants have been closed since March 15, 2020 to comply with the Director's Order from Ohio Governor Mike DeWine and the Ohio Department of Health (the "Ohio Order") closing all bars and restaurants to in-house patrons during the global COVID-19 pandemic. Plaintiffs' Pennsylvania restaurant has been closed since March 16, 2020 to comply with Pennsylvania's COVID-19 Disaster Declaration Order (the "Pennsylvania Order"). Plaintiffs'

Florida restaurants have been closed since March 20, 2020 to comply with Office of the Governor Executive Order Number 20-71 (the "Florida Order"). Plaintiffs' Michigan restaurants have been closed since March 16, 2020 to comply with Executive Order 2020-9 (the "Michigan Order"). Plaintiffs' Indiana restaurant has been closed since March 16, 2020 to comply with Executive Order 20-04 (the "Indiana Order"). The Ohio Order, the Pennsylvania Order, the Florida Order, the Michigan Order, and the Indiana Order are collectively referred to herein as the "Government Orders."

23.     As a direct result of the Government Orders, Plaintiffs' restaurants have suffered a complete loss of "business income" due to a necessary "suspension" of their "operations" caused by "physical loss of or damage to property" and directly caused by a "covered cause of loss." Plaintiffs' suspension of operations has clearly and unambiguously been caused by (a) a material deprivation of something Plaintiffs had and/or (b) an injury or harm that has reduced the value or usefulness of property — e.g., the Insured Locations and/or the right to use/access the Insured Locations pursuant to leasehold interests or otherwise. Plaintiffs' loss is clearly and unambiguously caused by a "fortuitous cause or event" (e.g., the Government Orders), not otherwise excluded, which actually occurred during the policy period.

24.     Moreover, as a direct result of the Government Orders, Plaintiffs' restaurants have suffered a complete loss of "business income" due to necessary "suspension" of their "operations" caused by orders of civil authorities prohibiting access to the "premises." The Government Orders result from civil authorities' response to direct physical loss or damage to property located within one mile from the "premises" that sustained a "business income loss." The loss or damage was directly caused by a "covered cause of loss."

25.     On or about March 24, 2020, Plaintiffs submitted a claim for BI Coverage to Zurich under the Policy.

26.     On April 27, 2020, Zurich issued a denial letter, wrongfully and in bad faith denying any and all BI Coverage.

**COUNT I**
**(Breach of Contract)**

27.     Plaintiffs hereby incorporate each and every allegation contained in the preceding paragraphs as if fully rewritten herein.

28.     Zurich issued the Policy to Plaintiffs.

29.     The Policy is a valid and binding contract, including offer, acceptance and consideration.

30.     The Policy provides BI Coverage to Plaintiffs, among other benefits.

31.     Plaintiffs have performed all conditions precedent, if any, to the Policy and/or are excused from same.

32.     Zurich has failed and refused to provide BI Coverage and/or other benefits to Plaintiffs under the Policy, constituting a breach of contract.

33.     As a direct and proximate result of Zurich's breach of contract, Plaintiffs have suffered damages in an amount to be proved at trial, but well in excess of $25,000.

**COUNT II**
**(Bad Faith Denial of Coverage)**

34.     Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs as if fully rewritten herein.

35.     Zurich owes Plaintiffs a duty to act in good faith with respect to Plaintiffs' claim for BI Coverage.

36.     Zurich's denial of BI Coverage in the face of the clear and unambiguous language of the Policy is in bad faith.

37.    As a direct and proximate result of Zurich's bad faith denial of BI Coverage, Plaintiffs have suffered damages in an amount to be proved at trial, but well in excess of $25,000, and are also entitled to an award of punitive damages.

## COUNT III
### (Declaratory Judgment)

38.    Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs as if fully rewritten herein.

39.    There exists a real and justiciable controversy which is ripe for determination regarding the parties' rights and obligations under the Policy, including, without limitation, a dispute as to whether Plaintiffs are entitled to BI Coverage and/or other benefits under the Policy.

40.    Plaintiffs have no adequate remedy at law.

41.    Plaintiffs are entitled to a determination of the parties' rights and obligations under the Policy, including, without limitation, a declaration that they are entitled to BI Coverage and/or other benefits under the Policy.

WHEREFORE, Plaintiffs demand judgment against Zurich as follows:

    a.    On Count I, for compensatory damages in an amount to be proved at trial;

    b.    On Count II, for compensatory damages in an amount to be proved at trial, and an award of punitive damages;

    c.    On Count III, for an order declaring the rights and obligations of the parties under the Policy, including, without limitation, an order declaring that Plaintiffs are entitled to BI Coverage and/or other benefits under the Policy; and

    d.    On all Counts, for interest, costs and attorneys' fees as allowed by law, and such other and further relief as may be deemed just and equitable.

Dated: April 30, 2020

Respectfully submitted,

*/s/ Mark R. Koberna*
Mark R. Koberna (0038985)
Rick D. Sonkin (0038117)
Sean T. Koran (0085539)
SONKIN & KOBERNA, LLC
3401 Enterprise Parkway, Suite 400
Cleveland, Ohio 44122
Telephone (216) 514-8300
Facsimile (216) 514-4467
mkoberna@sklawllc.com
rsonkin@sklawllc.com
skoran@sklawllc.com

*Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiffs hereby demand a trial of all issues by a jury of the maximum number allowed by

law.

/s/ Mark R. Koberna
Mark R. Koberna (0038985)

*One of the Attorneys for Plaintiffs*



# Business Income Coverage Form
# (Excluding Extra Expense)

### Table of Contents

| Section | Page No. |
| --- | --- |
| Coverage | 1 |
| Additional Coverages | 1 |
| Exclusions | 4 |
| Limitations | 5 |
| Deductible | 6 |
| Loss Determination | 6 |
| Optional Coverages | 7 |



EXHIBIT
A



ZURICH®

# Business Income Coverage Form (Excluding Extra Expense)

## A. COVERAGE

We will pay for the actual loss of **"business income"** you sustain due to the necessary **"suspension"** of your **"operations"** during the **"period of restoration"**. The **"suspension"** must be caused by direct physical loss of or damage to property at a **"premises"** at which a Limit of Insurance is shown on the Declarations for Business Income. The loss or damage must be directly caused by a **"covered cause of loss"**. We will not pay more than the applicable Limit of Insurance shown on the Declarations for Business Income at that **"premises"**.

## B. ADDITIONAL COVERAGES

### 1. Civil Authority

We will pay for the actual loss of **"business income"** you sustain for up to the number of days shown on the Declarations for Civil Authority resulting from the necessary **"suspension"**, or delay in the start, of your **"operations"** if the **"suspension"** or delay is caused by order of civil authority that prohibits access to the **"premises"** or **"reported unscheduled premises"**. That order must result from a civil authority's response to direct physical loss of or damage to property located within one mile from the **"premises"** or **"reported unscheduled premises"** which sustains a **"business income"** loss. The loss or damage must be directly caused by a **"covered cause of loss"**.

The most we will pay under this Additional Coverage is the Limit of Insurance shown on the Declarations for Business Income at the **"premises"** or **"reported unscheduled premises"** where access was prohibited.

The Limit for this Additional Coverage is included in, and not in addition to, the applicable Limit of Insurance.

### 2. Contractual Penalties

We will pay contractual penalties you are legally liable to pay under the provisions of a written contract due to late or non-completion of orders. Those penalties must be the result of direct physical loss of or damage to property at a **"premises"** or **"reported unscheduled premises"** at which a Limit of Insurance is shown on the Declarations for Business Income. The loss or damage must be directly caused by a **"covered cause of loss"**.

The most we will pay under this Additional Coverage in any one occurrence is the Limit of Insurance shown on the Declarations for Contractual Penalties.

### 3. Electronic Vandalism

We will pay for the actual loss of **"business income"** you sustain due to the necessary **"suspension"** of your **"operations"** provided the **"suspension"** was directly caused by **"electronic vandalism"**.

The most we will pay under this Additional Coverage in any one policy year is the Annual Aggregate Limit of Insurance shown on the Declarations for Electronic Vandalism--Business Income.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Electronically Filed 04/30/2020 14:27 / / CV 20 932243 / Confirmation Nbr. 1991748 / CLDLJ

PPP-0130 (08 16)
Page 1 of 8

4. **Expense to Reduce Loss**

We will pay reasonable and necessary expenses you incur, except the cost of extinguishing a fire, to reduce the amount of loss of **"business income"**. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this Coverage Form and subject to the applicable Limit of Insurance shown on the Declarations for Business Income at that **"premises"** or **"reported unscheduled premises"**.

5. **Extended Period of Indemnity**

If the necessary **"suspension"** of your **"operations"** produces a **"business income"** loss payable under this Coverage Form, and you resume **"operations"** with reasonable speed, we will pay for the actual loss of **"business income"** you sustain during the **"extended period of indemnity"**.

The most we will pay under this Additional Coverage is the Limit of Insurance shown on the Declarations for Business Income at the **"premises"** or **"reported unscheduled premises"** where the direct physical loss or damage occurred.

The Limit for this Additional Coverage is included in, and not in addition to, the applicable Limit of Insurance.

6. **Fairs or Exhibitions**

We will pay for the actual loss of **"business income"** you sustain due to the necessary **"suspension"** of your **"operations"** during the **"period of restoration"**. The **"suspension"** must be caused by direct physical loss of or damage to property at, or while in transit to or from, any fair or exhibition. The loss or damage must be directly caused by a **"covered cause of loss"**.

The most we will pay under this Additional Coverage in any one occurrence is the Limit of Insurance shown on the Declarations for Fairs or Exhibitions--Business Income.

7. **Ingress/Egress**

We will pay for the actual loss of **"business income"** you sustain for up to the number of days shown on the Declarations for Ingress/Egress following the necessary **"suspension"** of your **"operations"**, when ingress or egress by your suppliers, customers, or employees to the **"premises"** or **"reported unscheduled premises"** is physically obstructed due to direct physical loss or damage. The actual loss of **"business income"** you sustain must be caused by direct physical loss or damage to property not owned, occupied, leased, or rented by you, or insured under this Commercial Property Coverage Part. That property must be located within one mile from the **"premises"** or **"reported unscheduled premises"** which sustains a **"business income"** loss. The obstruction cannot be the result of an order of civil authority that prohibits access to that **"premises"** or **"reported unscheduled premises"**. The loss or damage must be directly caused by a **"covered cause of loss"**.

The most we will pay under this Additional Coverage is the Limit of Insurance shown on the Declarations for Business Income at the **"premises"** or **"reported unscheduled premises"** where ingress or egress was obstructed.

The Limit for this Additional Coverage is included in, and not in addition to, the applicable Limit of Insurance.

8. **Microorganisms**

We will pay for the actual loss of **"business income"** you sustain due to the:

a. Necessary **"suspension"** of your **"operations"** from direct physical loss of or damage to Covered Property caused by **"microorganisms"** when the **"microorganisms"** are the result of a **"covered cause of loss"**; or

b. Prolonged **"period of restoration"** due to the remediation of **"microorganisms"** from a covered loss.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Electronically Filed 04/30/2020 14:27 / / CV 20 932243 / Confirmation Nbr. 1991748 / CLDLJ

PPP-0130 (08 16)
Page 2 of 8

The most we will pay under this Additional Coverage in any one policy year is the Annual Aggregate Limit of Insurance shown on the Declarations for Microorganisms--Business Income. Regardless of the number of claims, this Limit of Insurance is the most we will pay for the total of all loss, even if the **"microorganisms"** continue to be present, active, or recur.

9. **Newly Acquired Premises**

   We will pay for the actual loss of **"business income"** you sustain due to the necessary **"suspension"** of your **"operations"** during the **"period of restoration"**. The **"suspension"** must be caused by direct physical loss of or damage to your property at a **"newly acquired premises"**. The loss or damage must be directly caused by a **"covered cause of loss"**.

   This Additional Coverage will automatically expire on the earliest of the following dates:

   a. The date you report the **"newly acquired premises"** to us;

   b. The number of days shown on the Declarations from the date the location becomes a **"newly acquired premises"**; or

   c. The date this policy expires or is cancelled.

   We will charge you additional premium for values reported from the date the location becomes a **"newly acquired premises"**.

   The most we will pay under this Additional Coverage at any one **"newly acquired premises"** is the Limit of Insurance shown on the Declarations for Newly Acquired Premises--Business Income.

10. **Reported Unscheduled Premises**

    We will pay for the actual loss of **"business income"** you sustain due to the necessary **"suspension"** of your **"operations"** during the **"period of restoration"**. The **"suspension"** must be caused by direct physical loss of or damage to property at a **"reported unscheduled premises"**. The loss or damage must be directly caused by a **"covered cause of loss"**.

    The most we will pay under this Additional Coverage at any one **"reported unscheduled premises"** is the Limit of Insurance shown on the Declarations for Reported Unscheduled Premises--Business Income.

11. **Scheduled Property**

    We will pay for the actual loss of **"business income"** you sustain due to the necessary **"suspension"** of your **"operations"** during the **"period of restoration"**. The **"suspension"** must be caused by direct physical loss of or damage to **"scheduled property"**. The loss or damage must be directly caused by a **"covered cause of loss"** within the Coverage Territory.

    The most we will pay under this Additional Coverage in any one occurrence is 25% of the applicable Limit of Insurance shown on the SCHEDULED PROPERTY COVERAGE FORM.

12. **Transit**

    We will pay for the actual loss of **"business income"** you sustain due to the necessary **"suspension"** of your **"operations"** during the **"period of restoration"**. The **"suspension"** must be caused by direct physical loss of or damage to property in transit, other than while in transit to or from any fair or exhibition. The loss or damage must be directly caused by a **"covered cause of loss"**.

The most we will pay under this Marine Coverage in any one occurrence is the Limit of Insurance shown on the Declarations for Transit--Business Income.

### 13. Unreported Premises

We will pay for the actual loss of **"business income"** you sustain due to the necessary **"suspension"** of your **"operations"** during the **"period of restoration"**. The **"suspension"** must be caused by direct physical loss of or damage to your property, or property of your landlord, at an **"unreported premises"**. The loss or damage must be directly caused by a **"covered cause of loss"**.

The most we will pay under this Additional Coverage at any one **"unreported premises"** is the Limit of Insurance shown on the Declarations for Unreported Premises--Business Income.

## C. EXCLUSIONS

### 1. Real or Personal Property

The exclusions in paragraphs 6., 7., 8., and 9. below and the excluded causes of loss in the REAL AND PERSONAL PROPERTY COVERAGE FORM, except Off-Premises Service Interruption, apply to loss of **"business income"** caused by or resulting from loss of or damage to any property other than:

a. **"Fine arts"**;

b. **"Original information property"**;

c. **"Outdoor trees, shrubs, plants, or lawns"**;

d. **"Green roofing systems"**;

e. **"Personal property"** in transit; or

f. **"Scheduled property"**.

### 2. Fine Arts

The exclusions in paragraphs 6., 7., 8., and 9. below and the excluded causes of loss in the FINE ARTS COVERAGE FORM apply to loss of **"business income"** caused by or resulting from loss of or damage to **"fine arts"**.

### 3. Original Information Property

The exclusions in paragraphs 6., 7., 8., and 9. below and the excluded causes of loss in the ORIGINAL INFORMATION PROPERTY COVERAGE FORM apply to loss of **"business income"** caused by or resulting from loss of or damage to **"original information property"**.

### 4. Personal Property in Transit

The exclusions in paragraphs 6., 7., 8., and 9. below and the excluded causes of loss in the TRANSIT COVERAGE FORM apply to loss of **"business income"** caused by or resulting from loss of or damage to **"personal property"** in transit.

### 5. Scheduled Property

The exclusions in paragraphs 6., 7., 8., and 9. below and the excluded causes of loss in the SCHEDULED PROPERTY COVERAGE FORM apply to loss of **"business income"** caused by or resulting from loss of or damage to **"scheduled property"**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Electronically Filed 04/30/2020 14:27 / / CV 20 932243 / Confirmation Nbr. 1991748 / CLDLJ

PPP-0130 (08 16)
Page 4 of 8

6.  **Finished Stock**

We will not pay for loss of **"business income"** caused by or resulting from:

a.  Loss of or damage to **"finished stock"**; or

b.  The time required to replace **"finished stock"**.

7.  **Off-Premises Service Interruption**

We will not pay for loss of **"business income"** caused by or resulting from any **"off-premises service interruption"**. Such loss is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

8.  **Suspension, Lapse, or Cancellation**

We will not pay for any loss of **"business income"** caused by or resulting from a suspension, lapse, or cancellation of any license, lease, or contract, unless the suspension, lapse, or cancellation is directly caused by the **"suspension"** of your **"operations"**. If the suspension, lapse, or cancellation of any license, lease, or contract is directly caused by the **"suspension"** of your **"operations"**, we will not pay for that portion of any loss from such suspension, lapse, or cancellation which occurs after the **"extended period of indemnity"**.

9.  **Space and Space Related Risks**

We will not pay for any loss of **"business income"** caused by or resulting from loss of or damage to:

a.  Spacecraft, satellites, associated launch vehicles and any major components, including any property contained therein; or

b.  Launch facilities for spacecraft or satellites.

## D. LIMITATIONS

1.  **Idle Periods**

We will not pay for loss of **"business income"** during any period in which business would not or could not have been conducted for any reason other than:

a.  Direct physical loss of or damage to property as described in Section A., Coverage, above;

b.  A civil authority prohibiting access to the **"premises"** or **"reported unscheduled premises"** as described in the Civil Authority Additional Coverage above; or

c.  A physical obstruction affecting ingress or egress to the **"premises"** or **"reported unscheduled premises"** as described in the Ingress/Egress Additional Coverage above.

2.  **Strikers or Others Causing Delay**

We will not pay for any loss of **"business income"** caused by or resulting from delay in rebuilding, repairing, or replacing property, or resuming **"operations"**, due to the interference at the location of the rebuilding, repair, or replacement by strikers or other persons.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Electronically Filed 04/30/2020 14:27 / / CV 20 932243 / Confirmation Nbr. 1991748 / CLDLJ

PPP-0130 (08 16)
Page 5 of 8

3. Outdoor Trees, Shrubs, Plants, or Lawns

We will not pay for loss of **"business income"** caused by or resulting from loss of or damage to **"outdoor trees, shrubs, plants, or lawns"** unless the loss or damage is directly caused by fire, lightning, explosion, riot or civil commotion, or aircraft.

4. Green Roofing Systems

We will not pay for loss of **"business income"** caused by or resulting from loss of or damage to **"green roofing systems"** unless the loss or damage is directly caused by a **"covered cause of loss"** other than loss or damage caused by or resulting from:

   a.   Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, or other animals;

   b.   Disease;

   c.   Changes in or extremes of temperature;

   d.   Dampness or dryness of atmosphere or of soil supporting the vegetation; or

   e.   Rain, snow, hail, ice, or sleet.

## E.  DEDUCTIBLE

We will not pay for any loss of **"business income"** in any one occurrence until the amount of loss exceeds the applicable Deductibles or is incurred after the applicable Waiting Periods shown on the Declarations. We will then pay the amount of actual **"business income"** loss sustained in excess of the Deductibles or incurred after the Waiting Periods, up to the applicable Limits of Insurance.

If a Waiting Period is shown on the Declarations, the Waiting Period begins immediately following the direct physical loss of or damage to property, directly caused by a **"covered cause of loss"**.

## F.  LOSS DETERMINATION

1. Sources of Information

The amount of actual **"business income"** loss sustained will be based on relevant sources of information, including, but not limited to:

   a.   Your financial records, tax returns, and accounting procedures;

   b.   Bills, invoices, and other vouchers; and

   c.   Deeds, liens, and contracts.

2. Net Income

The amount of **"net income"** will be determined based on:

   a.   The **"net income"** of the business before the direct physical loss or damage occurred; and

   b.   The likely **"net income"** of the business if no direct physical loss or damage had occurred.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Electronically Filed 04/30/2020 14:27 / / CV 20 932243 / Confirmation Nbr. 1991748 / CLDLJ

PPP-0130 (08 16)
Page 6 of 8

3. **Continuing Expenses**

   The amount of **"continuing expenses"** will be determined based on those expenses which are necessary to resume your **"operations"** with the same quality of service that existed just before the direct physical loss or damage and which are incurred during the **"period of restoration"** or **"extended period of indemnity"**.

4. **Resumption of Operations**

   We will reduce the amount of the **"business income"** loss payment:

   a. To the extent you could resume your **"operations"**, in whole or in part, by using damaged or undamaged property, including **"stock"**; or

   b. To the extent you could resume your **"operations"**, in whole or in part, by using any other location.

5. **Finished Stock and Merchandise**

   Lost or damaged **"finished stock"** or **"merchandise"** that is valued at regular cash selling price will be considered to have been sold to your customers and will be credited against the lost sales.

## G. OPTIONAL COVERAGES

If shown on the Declarations, the following Optional Coverages apply separately to each item:

1. **Maximum Period of Indemnity**

   The most we will pay for loss of **"business income"** is the lesser of:

   a. The amount of loss incurred during the 120 days immediately following the beginning of the **"period of restoration"**; or

   b. The Limit of Insurance shown on the Declarations.

   The Additional Condition--Coinsurance endorsement does not apply to this Optional Coverage.

   The Extended Period of Indemnity Additional Coverage does not apply.

2. **Monthly Limit of Indemnity**

   The most we will pay for loss of **"business income"** in each period of 30 consecutive days after the beginning of the **"period of restoration"** is:

   a. The Limit of Insurance, multiplied by

   b. The fraction shown on the Declarations for this Optional Coverage.

   The Additional Condition--Coinsurance endorsement does not apply to this Optional Coverage.

   The Extended Period of Indemnity Additional Coverage does not apply.

   **Example:**

   If:

   a. The Limit of Insurance is $120,000.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Electronically Filed 04/30/2020 14:27 / / CV 20 932243 / Confirmation Nbr. 1991748 / CLDLJ

PPP-0130 (08 16)
Page 7 of 8

**b.** The fraction shown on the Declarations for this Optional Coverage is 1/4.

The most we will pay for loss in each period of 30 consecutive days is $30,000.

If, in this example, the actual amount of the loss is:

| | |
|---|---|
| Days 1-30 | $40,000 |
| Days 31-60 | 20,000 |
| Days 61-90 | 30,000 |
| | $90,000 |

We will pay:

| | |
|---|---|
| Days 1-30 | $30,000 |
| Days 31-60 | 20,000 |
| Days 61-90 | 30,000 |
| | $80,000 |

The remaining $10,000 of loss is not covered.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Electronically Filed 04/30/2020 14:27 / / CV 20 932243 / Confirmation Nbr. 1991748 / CLDLJ

PPP-0130 (08 16)
Page 8 of 8