**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| HENDERSON ROAD RESTAURANT SYSTEMS, INC. DBA HYDE PARK GRILLE, *et al.*, | Case No. 1:20-cv-01239-DAP |
| Plaintiffs, | |
| v. | **DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT** |
| ZURICH AMERICAN INSURANCE COMPANY, | |
| Defendant. | |

Pursuant to Federal Rule of Civil Procedure 56, Defendant Zurich American Insurance Company moves for summary judgment on all of Plaintiffs' causes of action. A brief in support of this Motion is attached.

Respectfully submitted,

*/s/ Jennifer L. Mesko*
Kevin M. Young (0029715)
Jennifer L. Mesko (0087897)
**TUCKER ELLIS LLP**
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Tel: 216.592.5000
Fax: 216.592.5009
E-mail: kevin.young@tuckerellis.com
            jennifer.mesko@tuckerellis.com

Jonathan Gross (*pro hac vice*)
**Mound Cotton Wollan & Greengrass LLP**
2200 Powell Street, Suite 1050
Emeryville, CA 94608
Tel: (510) 900-9375
Fax: (510) 900-9381
Email: jgross@moundcotton.com

*Attorneys for Zurich American Insurance Company*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

STATEMENT OF THE ISSUES ................................................................................... 1

SUMMARY OF ARGUMENT ...................................................................................... 2

FACTUAL BACKGROUND ......................................................................................... 4

    A. Plaintiffs did not close their restaurants because of physical loss or damage or the known or confirmed presence of COVID-19. ....................................................... 4

    B. The Zurich Policy ............................................................................................... 5

STANDARD OF REVIEW ............................................................................................ 6

ARGUMENT .................................................................................................................. 7

    C. The policy's "Microorganism" exclusion expressly excludes virus-related losses .......... 11

    D. Coverage for Civil Authority also fails because the orders did not prohibit access to the restaurants, and were not in response to loss or damage to nearby property. ............ 14

        1. The orders did not "prohibit access" to Plaintiffs' restaurants. .................................. 14

        2. The orders responded to a public health crisis, not property loss or damage. ............ 16

    E. Plaintiffs are not entitled to declaratory judgment as a matter of law because Plaintiffs' losses are not covered by the policy. ............................................................. 18

    F. Zurich's denial was reasonably justified and not in bad faith as a matter of law ............. 18

CONCLUSION ............................................................................................................. 19

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F) ........................... 20

CERTIFICATE OF SERVICE ..................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10E, LLC v. Travelers Indem. Co. of Conn.*,
   No. 2:20-cv-04418, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020) ...............................................10, 17

*Alexander v. Buckeye Pipe Line Co.*,
   374 N.E.2d 146 (Ohio 1978) ...........................................................................................................7

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .......................................................................................................................6, 7

*Bethel Village Condo. Ass'n v. Republic-Franklin Ins. Co.*,
   No. 06AP-691, 2007 WL 416693 (Ohio Ct. App. Feb. 8, 2007) .....................................................9

*Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*,
   667 F.3d 669 (6th Cir. 2011) .............................................................................................................7

*Boughan v. Nationwide Prop. & Cas. Co.*,
   No. 1-04-57, 2005 WL 126781 (Ohio Ct. App. Jan. 24, 2005) ......................................................12

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .........................................................................................................................6

*Cleveland Freightliner, Inc. v. Federated Serv. Ins. Co.*,
   No. 1:09CV1108, 2010 WL 395626 (N.D. Ohio Jan. 26, 2010) ....................................................18

*Copeland v. Machulis*,
   57 F.3d 476 (6th Cir. 1995) ..............................................................................................................6

*Diesel Barbershop, LLC v. State Farm Lloyds*,
   No. 5:20-CV-461, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) ..................................................9

*Franklin EWC, Inc. v. Hartford Fin. Servs. Grp.*,
   No. 20-cv-04434, 2020 WL 5642483 (N.D. Cal. Sept. 22, 2020) ..................................................13

*Front Row Theatre, Inc v. Am. Mfr's. Mut. Ins. Cos.*,
   18 F.3d 1343 (6th Cir. 1994) ...........................................................................................................13

*Gavrilides Mgmt. Co. v. Mich. Ins. Co.*,
   No. 20-258-CB (Mich. Cir. Ct. July 1, 2020) ...........................................................................10, 13

*Hartman v. Erie Ins. Co.*,
   85 N.E.3d 454 (Ohio Ct. App. 2017) ..............................................................................................13

*In re Sonic Corp. Customer Data Sec. Breach Litig. (Fin. Insts.)*,
   No. 1:17-md-2807, 2020 WL 3577341 (N.D. Ohio July 1, 2020) ..................................................18

ii

*Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*,
   No. 8:20-cv-1605-T-30AEP, 2020 WL 5791583 (M.D. Fla. Sept. 28, 2020) ............................ 2, 10

*Jim White Agency Co. v. Nissan Motor Corp. in USA*,
   126 F.3d 832 (6th Cir. 1997) ............................................................................................ 7

*Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*,
   No. 09-6057, 2010 WL 4026375 (E.D. La. Oct. 12, 2010) .................................................. 17

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*,
   No. 06-770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007) .............................................. 15

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*,
   No. 4:19-cv-00693, 2020 WL 886120 (D.S.C. Feb. 24, 2020) ............................................ 17

*Malaube, LLC v. Greenwich Ins. Co.*,
   No. 20-22615, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) .............................................. 10

*Mama Jo's, Inc. v. Sparta Ins. Co.*,
   No. 18-12887, 2020 WL 4782369 (11th Cir. Aug. 18, 2020) ............................................... 9

*Mastellone v. Lightning Rod Mut. Ins. Co.*,
   884 N.E.2d 1130 (Ohio Ct. App. 2008) ......................................................................... 2, 8, 11

*Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*,
   No. 2:20-cv-00401, 2020 WL 5240218 (M.D. Fla. Sept. 2, 2020) ................................... 13, 18

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
   187 Cal. App. 4th 766 (2010) ........................................................................................... 9

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
   No. 20-cv-03213, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020) ..................................... 17

*Murray v. Auto-Owners Ins. Co.*,
   40 N.E.3d 679 (Ohio Ct. App. 2015) ................................................................................ 7

*Not Home Alone, Inc. v. Philadelphia Indem. Ins. Co.*,
   No. 1:10-cv-54, 2011 WL 13214381 (E.D. Tex. Mar. 30, 2011) ...................................... 17

*Ohayon v. Safeco Ins. Co.*,
   747 N.E.2d 206 (Ohio 2001) ............................................................................................ 7

*Oral Surgeons, P.C. v. The Cincinnati Ins. Co.*,
   No. 4-20-CV-222-CRW-SBJ (S.D. Iowa Sept. 29, 2020) .................................................. 10

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*,
   No. 20-CV-907, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020) .......................................... 10

*Penton Media, Inc. v. Affiliated FM Ins. Co.*,
   No. 1:03 CV 2111, 2005 WL 8171363 (N.D. Ohio Sep. 30, 2005),
   245 F. App'x 495 (6th Cir. 2007) ....................................................... 14

*Rose's 1, LLC v. Erie Ins. Exch.*,
   No. 2020 CA 002424, 2020 WL 4589206 (D.C. Super. Ct. Aug. 8, 2020) ...................................... 10

*Rudolph v. Allstate Ins. Co.*,
   No. 2:18-cv-1743, 2020 WL 4530600 (S.D. Ohio Aug. 6, 2020)..................................... 8

*S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*,
   No. H-06-4041, 2008 WL 450012 (S.D. Tex. Feb. 15, 2008) ...................................... 17

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*,
   No. 20 CV 2160, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020) ....................................... 10

*Schmidt v. Travelers Indem. Co. of Am.*,
   101 F. Supp. 3d 768 (S.D. Ohio 2015) ....................................... 8

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*,
   No. 3:09-CV-02391, 2010 WL 2696782 (M.D. Pa. July 6, 2010)................................ 14, 16

*Social Life Magazine, Inc. v. Sentinel Ins. Co.*,
   No. 20-cv-03311-VEC (S.D.N.Y. May 14, 2020) ....................................... 10

*Southern Hosp., Inc. v. Zurich Am. Ins. Co*,
   393 F.3d 1137 (10th Cir. 2004)....................................... 15, 16

*Thomas v. Allstate Ins. Co.*,
   974 F.2d 706 (6th Cir. 1992)....................................... 18

*Tolton v. Am. Biodyne, Inc.*,
   48 F.3d 937 (6th Cir. 1995) ....................................... 6

*Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   No. 20-11655, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020)........................................ 13

*Universal Image Prods., Inc. v. Fed. Ins. Co.*,
   475 F. App'x 569 (6th Cir. 2012) ....................................... 8, 9, 11

*Westfield Ins. Co. v. Galatis*,
   797 N.E.2d 1256 (Ohio 2003) ....................................... 8

*Wilson v. Hartford Casualty Co.*,
   No. 20-3384 (W.D. Pa. Sept. 30, 2020) ....................................... 13

**Treatises**

10A Couch on Ins. § 148:46 (3d ed. 1998).................................................9

iv

## STATEMENT OF THE ISSUES

1. Have Plaintiffs met their burden to prove "direct physical loss of or damage to property"—a precondition for coverage under the coverage provisions Plaintiffs invoke (*i.e.*, Business Income and Civil Authority)—where Plaintiffs stipulate that (1) there was no physical alteration or structural damage to their restaurants; (2) there was no physical alteration or structural damage to property within one mile of any of their restaurants; and (3) none of their restaurants were closed as the result of the known or confirmed presence of SARS-CoV-2 or COVID-19?

2. Does the "Microorganism" exclusion—which expressly excludes coverage for losses caused directly or indirectly by a virus—foreclose coverage for business income losses when government orders required Plaintiffs to limit restaurant operations to take-out and delivery services in an effort to quell the spread of the SARS-CoV-2 virus and the resulting disease, COVID-19?

3. Have Plaintiffs met their burden to trigger Civil Authority coverage, which is limited to losses resulting from civil authority orders issued "in response" to direct physical loss of or damage by a covered cause of loss to property within one mile of Plaintiffs' insured premises that "prohibit[ed] access" to their insured premises, where the orders only limit operations rather than prohibit access to the locations, Plaintiffs stipulate there was no such loss or damage, and the orders responded to the spreading of SARS-CoV-2 virus and COVID-19?

4. Are Plaintiffs entitled to declaratory judgment when there is no coverage?

5. Have Plaintiffs met their burden to prove bad faith where there is no coverage and/or there is a reasonable justification for denial of coverage?

## SUMMARY OF ARGUMENT

Plaintiffs seek coverage under their commercial property insurance policy issued by Defendant Zurich American Insurance Company for alleged "business income" losses at their restaurants in Ohio, Indiana, Michigan, Pennsylvania, and Florida. Specifically, Plaintiffs contend the policy's Business Income Coverage Form covers their losses because of government orders issued in those states to reduce the spread of the SARS-CoV-2 virus and COVID-19. Zurich is entitled to summary judgment as a matter of law on all counts because Plaintiffs cannot meet their burden of establishing coverage under the policy.[1]

*First*, all the provisions at issue require "direct physical loss of or damage to property." Yet the parties agree that there was no known or confirmed presence of SARS-CoV-2 or COVID-19 at any of Plaintiffs' restaurants. Even if there were, the presence of the virus itself is not direct physical loss of or damage to property. Under Ohio law, "direct physical loss" requires "harm to the property that adversely affects the structural integrity of the [premises]." *Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130, 1143-44 (Ohio Ct. App. 2008) Moreover, the loss or damage must *permanently* affect the structural integrity of the property "such that it would need to be replaced." *See id.* at 1144-45. A mere detrimental economic impact is not enough. *Id.* at 1144. Across the country, courts have been reaching the same result nearly uniformly and dismissing claims, like that of Plaintiffs, that attempt to stretch *property* insurance policies to cover economic losses unhinged from any property loss or damage. *See, e.g.*, *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*, No. 8:20-cv-1605-T-30AEP, 2020 WL 5791583, at *4 (M.D. Fla. Sept. 28, 2020) ("Courts across the country have held that such coverage does not exist where, as here,

---

[1] The parties agreed to a Stipulation of Facts ("SOF") with accompanying exhibits (Doc. 12), which was filed separately and is expressly incorporated herein.

policyholders fail to plead facts showing physical property damage."). This Court should do the same here.

*Second*, the undisputed evidence shows that there was no "covered cause of loss." The policy's "Microorganism" exclusion plainly excludes (1) loss indirectly caused by any activity of a virus, and (2) loss arising out of an order requiring the insured to respond to a virus. Plaintiffs stipulate that they incurred losses from closing their restaurants in response to certain government orders to limit dine-in services. Those orders were indisputably issued in response to the SARS-CoV-2 virus and resulting disease, COVID-19. Under Ohio law, the virus is—at the very least—the indirect cause of loss and the policy excludes loss "directly or indirectly caused by" virus. Thus, the "Microorganism" exclusion also independently dooms Plaintiffs' claims.

*Third*, Plaintiffs cannot establish coverage under the "Civil Authority" provision as a matter of law where the government orders did not "prohibit access" to Plaintiffs' restaurants and were not issued in "response" to physical loss or damage to property within one mile from Plaintiffs' restaurants. Indeed, the parties stipulate that there has been no direct physical loss of or damage to property within a mile of Plaintiffs' restaurants. Moreover, the government orders expressly allow restaurants, as "Essential Businesses," to continue operating by providing food for consumption off-premises. Plaintiffs' restaurants were accessible at all times. The orders on their face also establish that they were issued in response to the spread of the SARS-CoV-2 virus and resulting COVID-19 pandemic, and the future threat presented to human health and life, not due to property loss or damage. In sum, the plain meaning of the orders and undisputed facts establish no coverage as a matter of law.

And because the policy does not cover Plaintiffs' alleged losses, there is no basis for Plaintiffs' bad faith claim and Zurich's denial certainly cannot be characterized as "without

reasonable justification." For these reasons, Zurich is entitled to summary judgment on all of Plaintiffs' claims.

## FACTUAL BACKGROUND

**A.      Plaintiffs did not close their restaurants because of physical loss or damage or the known or confirmed presence of COVID-19.**

Plaintiffs operate restaurants in Ohio, Pennsylvania, Michigan, Indiana, and Florida as part of the Hyde Park Restaurant Group, which they closed in response to the government orders in those states. SOF ¶¶ 4, 38-43. In March and April 2020, government orders issued in those states restricted the operations of restaurants in an effort to quell community spread of the SARS-CoV-2 virus and the resulting COVID-19 pandemic. SOF ¶¶ 7-43; SOF Exs. B-F. In response, Plaintiffs provided carry-out services for several days at its Ohio locations, then closed all restaurants entirely. SOF ¶ 38-46. Plaintiffs concede that there was no physical alteration or structural damage to their restaurants or any property within one mile of any of their restaurants. SOF ¶¶ 48, 51. Plaintiffs also stipulate that "none of their restaurants were closed as the result of the known or confirmed presence of SARS-CoV-2 or COVID-19" and there were "no known or presumed infected person(s) with COVID-19 at any of the restaurants." SOF ¶¶ 44, 46.

Plaintiffs sought coverage under the Zurich policy for the economic losses suffered due to their restaurant closures. SOF ¶ 52; SOF Ex. G; Compl. ¶¶ 12-13, 25. Zurich denied coverage for Plaintiffs' claim. SOF ¶ 53. Plaintiffs allege in this lawsuit that the policy's "Business Income Coverage Form (Excluding Extra Expense)" and "Civil Authority" provisions respond to their losses. Compl. ¶¶ 12-13. They allege causes of action for breach of contract (Count I), bad faith denial of coverage (Count II), and declaratory judgment (Count III). Compl. ¶¶ 27-41.

4

B.     **The Zurich Policy**

As relevant here, the policy's "Business Income Coverage Form (Excluding Extra Expense)" provides:

> We will pay for the actual loss of **"business income"** you sustain due to the necessary **"suspension"** of your **"operations"** during the **"period of restoration"**. The **"suspension"** must be caused by direct physical loss of or damage to property at a **"premises"** at which a Limit of Insurance is shown on the Declarations for Business Income. The loss or damage must be directly caused by a **"covered cause of loss"**.

Policy at ZAIC_Henderson_00000168, ¶ A.

The Business Income Coverage Form provides "additional coverages." Among those "additional coverages" is "Civil Authority" coverage. The Civil Authority provision in the "Business Income Coverage Form (Excluding Extra Expense)" provides:

> We will pay for the actual loss of **"business income"** you sustain for up to the number of days shown on the Declarations for Civil Authority resulting from the necessary **"suspension"**, or delay in the start, of your "**operations**" if the **"suspension"** or delay is caused by order of civil authority that prohibits access to the **"premises"** or **"reported unscheduled premises"**. That order must result from a civil authority's response to direct physical loss of or damage to property located within one mile from the **"premises"** or **"reported unscheduled premises"** which sustains a **"business income"** loss. The loss or damage must be directly caused by a **"covered cause of loss"**.

*Id.* at ZAIC_Henderson_00000168, ¶ B.1.

The policy defines "covered cause of loss" as "a fortuitous cause or event, *not otherwise excluded*, which actually occurs during this policy period." *Id.* at ZAIC_Henderson_00000086, ¶ 14 (emphasis added). The Business Income Coverage Form states that "excluded causes of loss" in the Real and Personal Property Coverage form—including the "Microorganisms" exclusion— "apply to loss of '**business income**' caused by or resulting from loss of or damage to any property." *Id.* at ZAIC_Henderson_0171, ¶ C.1. In other words, "microorganisms"—a term specifically

5

defined to include viruses—are not a "covered cause of loss" for purposes of establishing coverage under the Business Income provision.

> The "Microorganisms" exclusion states:

> We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of **"microorganisms"**, unless resulting from fire or lightning. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, "**malfunction**", or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

> * * *

> We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **"microorganisms"**.

*Id.* at ZAIC_Henderson_0106, ¶ B.12. "**Microorganism**" is defined as "any type or form of organism of microscopic or ultramicroscopic size including, but not limited to . . . virus." *Id.* at ZAIC_Henderson_0091, ¶ 44.

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. Am. Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The "mere existence of a scintilla of evidence to support [the] plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). If the evidence is "merely

colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50.

## ARGUMENT

Plaintiffs allege that Zurich breached the policy by denying coverage under the policy's Business Income Coverage Form and Civil Authority coverage provisions. Compl. ¶¶ 12, 13, 32. As the "[o]ne who seeks to recover on [the] insurance policy," Plaintiffs have "the burden of demonstrating coverage" under these policy provisions and then "proving a loss." *Murray v. Auto-Owners Ins. Co.*, 40 N.E.3d 679, 685 (Ohio Ct. App. 2015) (citations omitted).[2] In the event the insured is able to demonstrate coverage under the policy, only then does the insurer bear the burden of demonstrating that an insurance claim falls within an exclusion to coverage. *Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, 667 F.3d 669, 677 (6th Cir. 2011).

Under Ohio law, insurance policies are contracts to be interpreted as a matter of law by the Court." *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St. 3d 306, 307, 875 N.E.2d 31 (2007) (citation omitted). "[W]here the terms in an existing contract are clear and unambiguous, [a] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978).

---

[2]    When, as here, federal jurisdiction is based on diversity of citizenship, the court "applies the [choice of law rules] of the state in which it sits." *Jim White Agency Co. v. Nissan Motor Corp. in USA*, 126 F.3d 832, 835 (6th Cir. 1997). "[I]n insurance cases," Ohio's choice-of-law analysis "will often correspond with the [Restatement of the Law – Conflict of Law's] view that the rights created by an insurance contract should be determined by the local law of the state which the parties understood was to be *the principal location of the insured risk*," unless "some other state has a more significant relationship . . . to the transaction and the parties. *Ohayon v. Safeco Ins. Co.*, 747 N.E.2d 206, 211 (Ohio 2001) (internal quotation marks and citations omitted).

Here, the named insured—Hyde Park Restaurant Group—is an Ohio corporation with a principal place of business in Ohio, as are a number of the Plaintiffs. Moreover, all Plaintiffs have their principal places of business in Ohio and at least some of the insured premises are in Ohio. Compl. ¶¶ 1, 22; Policy at ZAIC_Henderson_00000006. Accordingly, Ohio law applies.

"[C]ontracts should be construed so as to give effect to the intention of the parties," and "a court must give meaning to every paragraph, clause, phrase, and word, omitting nothing as meaningless, or surplusage and must consider the subject matter, nature, and purpose of the agreement." *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at \*4 (S.D. Ohio Aug. 6, 2020) (citation omitted); *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003) ("When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.").

### A.  Plaintiffs' economic losses were not caused by "direct physical loss of or damage to property."

Plaintiffs cannot establish there was "physical loss of or damage to property" as required by the Business Income Coverage Form and the Civil Authority provision. Policy at ZAIC_ Henderson_00000168, ¶ A, ¶ B.1. Plaintiffs concede that there was "no physical alteration or structural damage to any property at an Insured Premises." SOF ¶ 48. As such, under Ohio law summarized below, there was no "direct physical loss of or damage to property."

The Sixth Circuit, and federal and state courts in Ohio, have interpreted "direct physical loss" or damage to require some sort of tangible damage or permanent alteration of the property. *Mastellone*, 884 N.E.2d at 1144-45; *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012); *Schmidt v. Travelers Indem. Co. of Am.*, 101 F. Supp. 3d 768, 781 (S.D. Ohio 2015) (holding that the alleged loss was not covered because "there was no 'direct physical loss of or damage to' the 'checks' [such as being] destroyed and lost in a fire.").

In *Mastellone*, an Ohio Court of Appeals interpreted "direct physical loss" under Ohio law and held that mold and the staining it caused did not constitute direct physical loss because it was "only temporary and did not affect the structure of the wood." 884 N.E.2d at 1143-44. Because the mold could be cleaned from the siding, the court held that the siding had not been "structurally

altered such that it would need to be replaced." *Id.* Thus, the court required that there be harm to property that adversely affects the structural integrity of the premises. *Id.* at 1443.

Likewise, in *Universal Image*, the Sixth Circuit surveyed how different states have interpreted the "direct physical loss or damage" requirement and concluded that Ohio law requires "tangible, physical losses," not mere "economic losses." *Id.* The court also found that "cleaning and moving expenses" and "lost business income" "are not tangible, physical losses, but economic losses." *Id.* at 573.[3] Finally, in *Schmidt v. Travelers Indemnity Co. of America*, 101 F.Supp. 3d 768, 781 (S.D. Ohio 2015), the court held that the alleged loss was not covered because "there was no 'direct physical loss of or damage to' the cashier's 'checks' because they were not physically lost or damaged, unlike [such as being] destroyed and lost in a fire."[4]

Nearly every court across the country to have addressed the issue in the context of COVID-19 business-income loss has reached similar conclusions. *See, e.g., Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461, 2020 WL 4724305, at *5, *7 (W.D. Tex. Aug. 13, 2020) (dismissing

---

[3]    The court interchanged the phrase "physical injury" and "physical damage" using them both to refer to the requirement that there be some tangible loss to qualify as direct physical loss. Further, another Ohio court specifically held the terms "direct physical loss" and "damage" are interchangeable in interpreting policy language requiring "physical loss or damage". *Bethel Village Condo. Ass'n v. Republic-Franklin Ins. Co.*, No. 06AP-691, 2007 WL 416693, at *4 (Ohio Ct. App. Feb. 8, 2007) (holding that "physical loss" and "damage" are interchangeable in interpreting policy language requiring "physical loss or damage").

[4]    *See also Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 18-12887, 2020 WL 4782369, at *8 (11th Cir. Aug. 18, 2020) ("[U]nder Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'"); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010) ("A direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'"); 10A Couch on Ins. § 148:46 (3d ed. 1998) ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.").

insured's claims with prejudice, holding that "direct physical loss" requires "a distinct, demonstrable, physical alteration of the property"); *10E, LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-cv-04418, 2020 WL 5359653, at *6 (C.D. Cal. Sept. 2, 2020) (holding that "losses from inability to use property" as a result of COVID-19 orders "do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase"); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-CV-907, 2020 WL 5500221, at *4 (S.D. Cal. Sept. 11, 2020) (concluding that "government orders forcing [the plaintiffs'] businesses to stop operating" did not cause "direct physical loss of" the business property); *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615, 2020 WL 5051581, at *7 (S.D. Fla. Aug. 26, 2020) (holding that "direct physical loss or damage" requires a "physical problem," because "'direct physical' modifies both 'loss' and 'damage'"); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21, 2020) ("'[D]irect physical loss' . . . unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage."); *Infinity Exhibits*, 2020 WL 5791583, at *4-5 (stating that "there is simply no coverage under the policies if they require 'direct physical loss of or damage' to property" and recognizing that "[c]ourts across the country have held that such coverage does not exist where, as here, policyholders fail to plead facts showing physical property damage.").[5]

---

[5]  *See also* Hr'g Tr. at 4:25-5:4; 6:14-20, *Social Life Magazine, Inc. v. Sentinel Ins. Co.*, No. 20-cv-03311-VEC (S.D.N.Y. May 14, 2020) (ECF No. 24-1) (concluding that the virus "damages lungs . . . . It doesn't damage the property") (attached as Ex. 1); Order at 2, *Oral Surgeons, P.C. v. The Cincinnati Ins. Co.*, No. 4-20-CV-222-CRW-SBJ (S.D. Iowa Sept. 29, 2020) (ECF No. 23) (dismissing complaint with prejudice and acknowledging the weight of recent cases holding "that virus-related closures of business do not amount to direct loss to property") (attached as Ex. 2); Order and Hr'g Tr. 19:17-20:9, 20:5-9, *Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, No. 20-258-CB (Mich. Cir. Ct. July 1, 2020) ("[T]he plaintiff just can't avoid the requirement that there has to be something that physically alters the integrity of the property. There has to be some tangible, i.e., physical damage to the property.") (attached as Ex. 3); *Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020 CA 002424, 2020 WL 4589206, at *3 (D.C. Super. Ct. Aug. 8, 2020) ("[U]nder a natural reading of the term 'direct physical loss,' the words 'direct' and 'physical' modify the word 'loss.' As such, . . . any 'loss of use' must

Here, Plaintiffs concede that there was (1) "no physical alteration or structural damage to any property at an Insured Premises"; and (2) "no physical alteration or structural damage to property within one mile from an Insured Premises." SOF ¶ 48, 51. Nor were any of Plaintiffs' restaurants "closed as the result of the known or confirmed presence of SARS-CoV-2 or COVID-19 at any of the Insured Premises." SOF ¶ 44. Therefore, as in *Mastellone* and *Universal Image*, there is no physical loss of or damage to property, which bars Plaintiffs' claims.

Because it does not permanently change a property's structure, COVID-19 cannot, as a matter of law, cause "physical loss of or damage to property." Accordingly, Zurich is entitled to summary judgment.

**B.      The policy's "Microorganism" exclusion expressly excludes virus-related losses.**

Even if there had been direct physical loss of or damage to property, which Plaintiffs stipulate there was not, Plaintiffs' losses were not caused by a "covered cause of loss" as required by the Business Income Coverage Form and Civil Authority provision.  The policy states that loss or damage "must be directly caused by a **'covered cause of loss.'**" Policy at ZAIC_Henderson_ 00000168, ¶ A; ZAIC_Henderson_00000168, ¶ B.1. The policy defines a "**covered cause of loss**" as a "fortuitous cause or event, *not otherwise excluded*." *Id.* at ZAIC_Henderson_00000086, ¶ 14 (emphasis added). There is no covered cause of loss because the policy's "excluded causes of loss" for "Microorganisms" applies. Policy at ZAIC_Henderson_00000106, ¶ B.12. The Microorganism exclusion precludes coverage for (i) losses "consisting of, *directly or indirectly caused by*, contributed to, or aggravated by the presence, growth, proliferation, *spread, or any activity of* ***'microorganisms'***," defined to include viruses, and (ii) "loss, cost, or expense arising out of any

---

be caused . . . by something pertaining to matter—in other words, a direct physical intrusion on to the insured property").

request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects" of a virus. Policy at ZAIC_Henderson_00000106, ¶ B.12 (emphasis added); *see also id.* at ZAIC_Henderson_0091, ¶ 44 (definition of microorganism).

Plaintiffs stipulate that they closed their restaurants in response to government orders requiring them to limit their services in response to the SARS-CoV-2 virus and the resulting disease, COVID-19. SOF ¶¶ 38-43. Each of the government orders cited by Plaintiffs as the cause of their losses, by their express terms, were enacted to respond to the COVID-19 pandemic. *See, e.g.*, SOF Ex. B, Ohio Exec. Order 2020-01D (declaring a state of emergency due to COVID-19); SOF Ex. C, Ind. Exec. Order 20-02 (same); SOF Ex. D, Mich. Order 2020-4 (same); SOF Ex. E, Penn. Proclamation Mar. 6, 2020 (same); Fla. Exec. Order 20-52 (same). These stipulated facts and plain wording of the orders establish without doubt that the exclusion applies because Plaintiffs' losses arise out of orders requiring Plaintiffs to respond to the virus.

Ohio courts look to the underlying cause of loss, which here is the virus that causes COVID-19. In *Boughan v. Nationwide Property & Casualty Co.*, No. 1-04-57, 2005 WL 126781 (Ohio Ct. App. Jan. 24, 2005), for example, plaintiffs sought coverage for property damage to their floor caused by repeated "water seepage." *Id.* at *3. The court found that the "wet or dry rot" policy exclusion barred coverage, even though "water seepage" was not expressly stated in the exclusion because the "cause of the seepage" was "wet or dry rot," which was an expressly excluded cause of loss. Here, as in *Boughan*, the cause of Plaintiffs' loss (here, a virus) is expressly excluded. Moreover, the policy also excludes all loss indirectly caused by a virus. Thus, the microorganism exclusion bars coverage for Plaintiffs' claim.

12

Moreover, the exclusion's anti-concurrent causation language further underscores that no coverage exists here. That language specifies that the virus exclusion applies to exclude losses from virus activity "regardless of any other cause or event . . . that *contributes concurrently or in any sequence to* the loss, *even if such other cause or event would otherwise be covered*." Policy at ZAIC_Henderson_00000106, ¶ B.12 (emphasis added). Such anti-concurrent causation language within an exclusion is enforceable under Ohio law. *See Hartman v. Erie Ins. Co.*, 85 N.E.3d 454, 464-65 (Ohio Ct. App. 2017) (citing *Front Row Theatre, Inc v. Am. Mfr's Mut. Ins. Cos.*, 18 F.3d 1343, 1347 (6th Cir. 1994)). Thus, under the policy's plain and unambiguous language, no coverage exists for losses caused by the COVID-19 pandemic because the coronavirus—an excluded cause of loss—is a concurrent cause of loss and is necessarily part of the loss-causing sequence.[6]

---

[6]  *See Diesel Barbershop*, 2020 WL 4724305, at *6 (applying a virus exclusion's anti-concurrent causation clause to hold that, although the orders "technically forced the Properties to close to protect public health, the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community"); *Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 20-11655, 2020 WL 5258484, at *8-9 (E.D. Mich. Sept. 3, 2020) ("[T]he Virus Exclusion negates any coverage for Plaintiff's loss of income or extra expense" because the "only reasonable conclusion is that the Order—and, by extension, Plaintiff's business interruption losses—would not have occurred but for COVID-19," and "the Anti-Concurrent Causation Clause . . . extends the Virus Exclusion to all losses where a virus is part of the causal chain."); *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, No. 2:20-cv-00401, 2020 WL 5240218, at *2 (M.D. Fla. Sept. 2, 2020) (holding that "neither the Governor's executive order narrowing [plaintiff's] services . . . nor the disinfection of the [property] is a 'Covered Cause of Loss' under the plain language of the policy's [virus] exclusion," which excludes coverage for loss or damage caused "directly or indirectly" by a virus); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp.*,   No. 20-cv-04434, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020) ("[A]s the loss was caused directly or indirectly by the virus, the Virus Exclusion applies under its plain and unambiguous language."); Order and Hr'g Tr. 20:19-21:18, *Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, No. 20-258-CB (Mich. Cir. Ct. July 1, 2020)  (virus exclusion barred coverage for business income claim)]; Order at 17-22, *Wilson v. Hartford Casualty Co.*, No. 20-3384 (E.D. Pa. Sept. 30, 2020) (ECF No. 30) (holding that a similar virus exclusion and its anti-concurrent causation clause barred coverage for alleged losses, whether caused by the virus or governmental orders) (attached as Ex. 4).

Accordingly, the Microorganism exclusion in Plaintiffs' policy is fatal to its coverage claim. To hold otherwise would be to ignore the plain language of the policy and rewrite the policy's terms contrary to the parties' intent and the rules governing contract interpretation in Ohio.

**C.    Coverage for Civil Authority also fails because the orders did not prohibit access to the restaurants, and were not in response to loss or damage to nearby property.**

Plaintiffs' claim for coverage under the policy's Civil Authority provision fails for two additional reasons: (1) the government orders allowed the restaurants to continue operating and, therefore, did not "prohibit access" to those restaurants; and (2) the government orders were issued in response to a public-health crisis, not in "response to direct physical loss of or damage to property" within one mile from an insured premises.

**1.    The orders did not "prohibit access" to Plaintiffs' restaurants.**

To allege entitlement to Civil Authority coverage, Plaintiffs must establish that the state or local government "prohibit[ed] access" to their insured premises. Policy at ZAIC_Henderson_ 00000168, ¶ B.1. In *Penton Media, Inc. v. Affiliated FM Ins. Co.*, the court noted in dicta that "[c]ivil authority, when contained in an insurance policy, refers to the situation when a civil authority *prohibits* access to the insured's premises resulting in a total loss of business income." No. 1:03 CV 2111, 2005 WL 8171363, at *9 (N.D. Ohio Sep. 30, 2005) (emphasis added), *aff'd*, 245 F. App'x 495 (6th Cir. 2007). The court's observations in *Penton* are consistent with other jurisdictions holding that "where the action of a civil authority merely hinders access to the covered premises, without *completely* prohibiting access . . . such action is not covered under policies like the one in the instant case." *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at *4-5 (M.D. Pa. July 6, 2010) (granting summary judgment to insurer because insured ski resort could not show "a complete inability to access the premises, or a forced closing by a civil authority"); *accord Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*,

14

No. 06-770-C, 2007 WL 2489711, at *6 (M.D. La. Aug. 29, 2007) ("[C]ourts have held that access to an insured premises is 'prohibited' where the order or action of civil authority actually requires the insured's business premises to close, thereby invoking coverage for business losses."). Similarly, the Tenth Circuit has rejected an insured's claim for business-income coverage based on the FAA's suspension of airline flights in the wake of the September 11, 2001 terrorist attacks because the FAA "did not close [the insured's] hotels." *Southern Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1141 (10th Cir. 2004).

Here, there was no order prohibiting access to the restaurants because all of the orders allowed Plaintiffs' restaurant to continue to operate as "Essential Businesses and Operations." *See* SOF Ex. B, Ohio Director's Order, Mar. 15, 2020 (directing only that "[f]ood and beverage sales are restricted to carry-out and delivery only, no onsite consumption is permitted"); Ohio Director's Stay at Home Order, ¶12(o), Mar. 22, 2020 (allowing the operation of "restaurants and other facilities that prepare and serve food, but only for consumption off-premises), Ohio Director's Am. Stay at Home Order, ¶ 12(o), Apr. 2, 2020 (same); SOF Ex. C, Ind. Exec. Order 20-04, ¶ 6 (restaurants "are authorized to provide drive-thru, take-out and delivery services"), Ind. Exec. Order 20-08, ¶ 14(n), Ind. Exec. Order 20-14, ¶ 1(a) (same), Ind. Exec. Order 20-18, ¶ 14(m) (same) Ind. Exec. Order 20-20, ¶ 14(m) (same); SOF Ex. D, Mich. Exec. Order 2020-9, ¶ 1 ("Places of public accommodation subject to this section are encourage to offer food and beverage using delivery service, window service, walk-up service, drive-through service, or drive-up service"), Mich. Exec. Order 2020-20 (same), Mich. Exec. Order 2020-43 (same); SOF Ex. E, Penn. Order § 2, Mar. 19, 2020 ("All restaurants and bars previously have been ordered to close their dine-in facilities to help stop the spread of COVID-19. Businesses that offer carry-out-delivery, and drive-through food and beverage service may continue"); SOF Ex. F, FL 20-68, § 3

15

(limiting occupancy to 50%, parties to no more than 10 individuals, and requiring 6-foot distance between groups); FL 20-70, § 2 (suspending "on-premises food consumption" but allowing "delivery or take-out services").

As in *Ski Shawnee* and *Southern Hospitality*, access to Plaintiffs' restaurants was never prohibited. Instead, all of the orders considered restaurants to be essential businesses that were allowed to remain operational to offer takeout or delivery. In fact, Plaintiffs provided some carry-out service for several days. SOF ¶ 39. While Plaintiffs may have ultimately made a business decision to close instead of continuing to conduct limited operations, access was never prohibited to any of their restaurants by government order. Plaintiffs' losses are not covered under the Civil Authority coverage.

### 2. The orders responded to a public health crisis, not property loss or damage.

The policy's Civil Authority provision also states the orders "must result from a civil authority's response to direct physical loss of or damage to property located within one mile from the **'premises'**" of the restaurants. Policy at ZAIC_Henderson_00000168, ¶ B.1. Plaintiffs stipulate that "[t]here was no physical alteration or structural damage to property within one mile from an Insured Premises which formed the basis for any portion of this Claim." SOF, at ¶ 51. Therefore, under Ohio law discussed above, there was no "physical loss of or damage to" nearby property.

Further, the orders unquestionably were issued in response to the unfolding public health crisis resulting from spread of the virus that causes COVID-19, and the threat that further spread posed to human health and life. SOF Exs. B-F. They were not issued in response to any property loss or damage that *already* had occurred to property located nearby the restaurants. *See Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*, No. 09-6057, 2010 WL 4026375, at

16

*4 (E.D. La. Oct. 12, 2010) (civil authority insurance provisions "contemplate[] a sequence of events where direct physical loss or damage to property occurs and then an order prohibiting access *because of that damage* issues." (emphasis added)).[7] Underscoring the point, Ohio, for example, had only "three (3) patients [who tested] positive for COVID-19 in the State of Ohio" when the first of the orders was issued. S*ee* SOF Ex. B, Ohio Exec. Order 2020-01D, at 2. Accordingly, these orders, which were prophylactic measures designed to flatten the curve of COVID-19 cases, were not taken in *response* to lost or damaged property.

In the COVID-19 context, federal district courts have recently dismissed COVID-19 claims for civil authority coverage because the causal link between prior property loss or damage and the government's closure order was missing. For example, in *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-cv-03213, 2020 WL 5525171, at *7 (N.D. Cal. Sept. 14, 2020), the court concluded as a matter of law that an insured was "not entitled to Civil Authority coverage" because the government closure orders "were intended to prevent the spread of COVID-19." Thus, the court reasoned, "[b]ecause the orders were preventative," the insured had failed to "establish the requisite causal link between prior property damage and the government's closure order." *Id.* Similarly, in *10E*, 2020 WL 5359653, at *6, the court dismissed a claim for Civil Authority coverage because the insureds had failed to "describe particular property damage or articulate any facts connecting

---

7  *See also Not Home Alone, Inc. v. Philadelphia Indem. Ins. Co.*, No. 1:10-cv-54, 2011 WL 13214381, at *6 (E.D. Tex. Mar. 30, 2011) ("[C]overage is provided only for civil authority action *in response to* direct physical *loss of or damage* to property, and courts uniformly interpret this as requiring that such loss or damage precede the action of a civil authority.") (emphasis added); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, No. 4:19-cv-00693, 2020 WL 886120, at *8 (D.S.C. Feb. 24, 2020) (no civil authority coverage because no damage to "any property *before* the Governor issued the evacuation order"); *S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*, No. H-06-4041, 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008) (no coverage "[b]ecause the mandatory evacuation order . . . was issued due to the anticipated threat of damage . . . and not due to property damage that had occurred").

the alleged property damage to [the civil authority order's] restrictions." Rather, the insureds had only "assert[ed] without any relevant detail that 'the property that is damaged is in the immediate area of the Insured Property.'" *Id.* This Court should do the same.

### D. Plaintiffs are not entitled to declaratory judgment as a matter of law because Plaintiffs' losses are not covered by the policy.

A declaratory judgment is a remedy, not a standalone claim. Because Plaintiffs' breach-of-contract claim fails, so does their declaratory judgment claim. *In re Sonic Corp. Customer Data Sec. Breach Litig. (Fin. Insts.)*, No. 1:17-md-2807, 2020 WL 3577341, at *7 (N.D. Ohio July 1, 2020) ("[D]eclaratory judgment is a remedy or the relief sought, rather than an independent cause of action."); *Mauricio Martinez*, 2020 WL 5240218, at *3 (dismissing declaratory judgment claim in a COVID-19 property insurance case because, having dismissed the breach of contract claim, there no longer was any "actual controversy" over coverage).

### E. Zurich's denial was reasonably justified and not in bad faith as a matter of law.

"Ohio law clearly states if denial of coverage is appropriate there is no bad faith." *Cleveland Freightliner, Inc. v. Federated Serv. Ins. Co.*, No. 1:09CV1108, 2010 WL 395626, at *13 (N.D. Ohio Jan. 26, 2010). And even if a denial of coverage were incorrect, there is no bad faith as a matter of law if a "reasonable justification" existed for the denial, and therefore the denial was not "arbitrary or capricious." *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir. 1992). Here, there is no bad faith as a matter of law because Zurich's denial of coverage was correct and certainly not "arbitrary or capricious"—particularly given that nearly every federal case to have addressed the issue since has agreed with Zurich's position that no coverage exists under property insurance policies for claims, as here, predicated on the virus causing physical property loss or damage. *See supra* pages 9-10 (collecting cases).

18

## <u>CONCLUSION</u>

For the foregoing reasons, Zurich respectfully requests that the Court grant its Motion for

Summary Judgment and enter an order dismissing Plaintiffs' claims with prejudice.


Respectfully submitted,

*/s/ Jennifer L. Mesko*
Kevin M. Young (0029715)
Jennifer L. Mesko (0087897)
**TUCKER ELLIS LLP**
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Tel: 216.592.5000
Fax: 216.592.5009
E-mail: kevin.young@tuckerellis.com
           jennifer.mesko@tuckerellis.com

Jonathan Gross (*pro hac vice*)
**Mound Cotton Wollan & Greengrass LLP**
2200 Powell Street, Suite 1050
Emeryville, CA 94608
Tel: (510) 900-9375
Fax: (510) 900-9381
Email: jgross@moundcotton.com

*Attorneys for Zurich American Insurance*
*Company*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

I hereby certify that this brief complies with the track and page-number limitations required by Local Rule 7.1(f).

*/s/ Jennifer L. Mesko*
Kevin M. Young (0029715)
Jennifer L. Mesko (0087897)
**TUCKER ELLIS LLP**
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Tel: 216.592.5000
Fax: 216.592.5009
E-mail:  kevin.young@tuckerellis.com
            jennifer.mesko@tuckerellis.com

Jonathan Gross (pro hac vice)
**Mound Cotton Wollan & Greengrass LLP**
2200 Powell Street, Suite 1050
Emeryville, CA 94608
Tel: (510) 900-9375
Fax: (510) 900-9381
Email: jgross@moundcotton.com

*Attorneys for Zurich American Insurance*
*Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2020, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

> */s/ Jennifer L. Mesko*
> Kevin M. Young (0029715)
> Jennifer L. Mesko (0087897)
> **TUCKER ELLIS LLP**
> 950 Main Avenue, Suite 1100
> Cleveland, OH 44113
> Tel: 216.592.5000
> Fax: 216.592.5009
> E-mail: kevin.young@tuckerellis.com
>            jennifer.mesko@tuckerellis.com
>
> Jonathan Gross (*pro hac vice*)
> **Mound Cotton Wollan & Greengrass LLP**
> 2200 Powell Street, Suite 1050
> Emeryville, CA 94608
> Tel: (510) 900-9375
> Fax: (510) 900-9381
> Email: jgross@moundcotton.com
>
> *Attorneys for Zurich American Insurance Company*