IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HENDERSON ROAD RESTAURANT SYSTEMS, INC., d/b/a Hyde Park Grille, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>ZURICH AMERICAN INSURANCE CO.,<br><br>Defendant. | CASE NO: 1:20-CV-1239<br><br>Judge Dan Aaron Polster<br><br>**OPINION AND ORDER** |

On September 29, 2021, the Sixth Circuit vacated this Court's order granting summary judgment in favor of Plaintiffs on Counts I and III of the Complaint and further directed the Court to review the parties' summary judgment arguments in light of the recent decision, *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398 (6th Cir. 2021). ECF Docs. 23, 29. Now, consistent with the *Santo's* opinion and for the reasons stated below, the Court GRANTS summary judgment in favor of Defendant on Counts I and III.

## BACKGROUND

**A.**     **Relevant Facts**[1]

Each of the eleven plaintiffs[2] are business entities that operate restaurants affiliated with non-party Hyde Park Restaurant Group ("Hyde Park"). ECF Doc. 12 at 2. Plaintiffs' restaurants are located in Ohio, Pennsylvania, Michigan, Indiana and Florida. *Id.*

---

[1] The Court assumes the parties are familiar with the facts, given the previously filed cross-motions for summary judgment. However, the following facts are included for ease of reference.

[2] The eleven Plaintiffs are: Henderson Road Restaurant Systems, Inc. dba Hyde Park Grille; Coventry Restaurant Systems, Inc., dba Hyde Park Chop House; Chagrin Restaurants, LLC, dba Hyde Park Prime Steak House; JR Park LLC, dba Hyde Park Prime Steak House; HP CAP LLC, dba Hyde Park Prime Steakhouse; NSHP, LLC, dba Hyde Park Prime Steakhouse; HPD Restaurant Systems, Inc., dba Hyde Park Prime Steak House; 457 High Street

Defendant Zurich American Insurance Company ("Zurich") issued a commercial insurance policy (the "Policy") to Hyde Park and its affiliated restaurants, including each of the eleven Plaintiffs. ECF Doc. 12 at 1-2. As insureds under the Policy, Plaintiffs received from Zurich insurance coverage for property protection, general liability, and business automobiles. ECF Doc. 12 at 1-2; ECF Doc. 12-1 at 6.

The property protection portion of the Policy included an endorsement for business income coverage. ECF Doc. 12-1 at 6, 168. In relevant part, this endorsement states:

> We will pay for the actual loss of **"business income"** you sustain due to the necessary **"suspension"** of your **"operations"** during the **"period of restoration"**. The **"suspension"** must be caused by direct physical loss of or damage to property at a **"premises"** at which a Limit of Insurance is shown on the Declarations for Business Income. The loss or damage must be directly caused by a **"Covered cause of loss".** We will not pay more than the applicable Limit of Insurance shown on the Declarations for Business Income at that **"premises."**

ECF Doc. 12-1 at 168 (emphasis in original). The Policy goes on to define "period of restoration," in relevant part, as the period beginning when operations are suspended and ending on:

> [t]he date when the location where the loss or damage occurred could have been physically capable of resuming the level of **"operations"** which existed prior to the loss or damage, if the location had been restored to the physical size, construction, configuration, location, and material specifications which would satisfy the minimum requirements necessary to obtain all required building permits, occupancy permits, operating licenses, or similar documents[.]

*Id*. at 94 (emphasis in original).

The Policy does not include any definition of the business income endorsement's phrase "direct physical loss" or for the word "property." *See generally* ECF Doc. 12-1. Instead, the Policy specifies that undefined words and phrases "are intended to have their ordinary or common

---

Development, LLC; CAP Restaurant Development LLC; RJ Moreland Hills, LLC; and Northville Development, LLC (collectively, the "Plaintiffs").

meaning," as well as that a dispute about a word or phrase's ordinary meaning should be resolved using the most recent version of *Webster's Unabridged Dictionary* ("*Webster's*"). *Id.* at 74.

On March 24, 2020, Plaintiffs filed a claim under the Policy's business income endorsement to recover financial losses Plaintiffs sustained when their various states issued bans on in-person dining due to the COVID-19 pandemic. ECF Doc. 12 at 7; ECF Doc. 12-2; ECF Doc. 12-3; ECF Doc. 12-4; ECF Doc. 12-5; ECF Doc. 12-6. As a result of these in-person dining bans, each of Plaintiffs' restaurants ceased operations entirely sometime during the week of March 15, 2020, and the various premises remained close through at least April 27, 2020. ECF Doc. 12 at 6-7. During the closure period, none of the premises experienced any physical alterations or structural damage. *Id.* at 7.

Thereafter, on April 27, 2020, Zurich denied Plaintiffs' claim in its entirety. ECF Doc. 12 at 8; EFC Doc. 12-8 at 2-6. Zurich concluded, in relevant part, that the business income endorsement did not cover Plaintiffs' losses because Plaintiffs did not suffer a direct physical loss of property at the premises as a result of the in-person dining bans. ECF Doc. 12-8 at 3.

**B.** **Procedural History**

On April 30, 2020, Plaintiffs challenged Zurich's denial of their insurance claim by filing the instant case in the Cuyahoga County Court of Common Pleas. ECF Doc. 1-2. Plaintiffs asserted a claim for breach of contract (Count I), a claim for bad faith denial of coverage (Count II), and a claim for declaratory judgment (Count III). ECF Doc. 1-2 at 15-16. Defendant removed the case to federal court on June 5, 2020. ECF Doc. 1.

Following limited discovery on the issue of whether the Policy covered the type of lost business income incurred by Plaintiffs, the parties cross-moved for summary judgment on October 30, 2020. ECF Docs. 14, 15. Plaintiffs contended, in relevant part, that they were entitled to

judgment as a matter of law because the state bans on in-person dining amounted to a direct physical loss of property under the plain meaning of the Policy. ECF Doc. 15 at 5-15. Conversely, Zurich argued that it was entitled to judgment on all counts because the "direct physical loss" language in the business income endorsement required that Plaintiffs incur a tangible or permanent loss of property, which indisputably did not occur here. ECF Doc. 14 at 8-11.

On January 19, 2021, the Court granted summary judgment in favor of Plaintiffs on Counts I and III, but granted summary judgment in favor of Zurich on Count II. ECF Doc. 22 at 32. In reaching this decision, the Court reasoned the phrase "direct physical loss of or damage to" property was ambiguous and, thus, must be construed against Zurich as the drafter under Ohio law. *Id.* at 18-23. In interpreting the Policy in Plaintiffs' favor, the Court concluded Plaintiffs had incurred a physical loss of their properties because they were unable to use them for their intended purpose during the in-person dining bans. *Id.* at 23-26.

In granting summary judgment on Count I to Plaintiffs, the Court also certified that Zurich could seek an interlocutory appeal from the judgment pursuant to 28 U.S.C. § 1292(b). *Id.* at 32-33.[3] The Court noted that an interlocutory appeal was appropriate because the question of whether the in-person dining bans had caused a direct physical loss of property was a controlling legal question over which there was substantial ground for difference of opinion. *Id.*

On February 2, 2021, Zurich sought leave to appeal the Court's summary judgment ruling to the Sixth Circuit and argued that the business income endorsement required a physical or tangible loss of property. *See generally* Petition for Permission to Appeal, In re: Zurich Am. Ins. Co., No. 21-302 (6th Cir. Feb. 2, 2021), ECF. No. 1. Plaintiffs opposed Zurich's petition, arguing

---

[3] An interlocutory appeal was necessary for Count I because the parties had not conducted discovery on the issue of damages and, thus, the Court did not rule on damages. ECF Doc. 22 at 32. As such, the judgment was not yet final for that count. *Id.*

the Court had correctly decided the coverage issue, and there was no need for the Sixth Circuit to accept the interlocutory appeal. *See generally* Answer to Petition for Permission to Appeal Pursuant, In re: Zurich Am. Ins. Co., No. 21-302 (6th Cir. Feb. 8, 2021), ECF. No. 11.

In September 2021, while Zurich's petition for leave to appeal was still pending, the Sixth Circuit issued the *Santo's* decision. The Sixth Circuit interpreted "direct physical loss of or damage to Covered Property" as not covering the lost *use* of a restaurant property during Ohio's ban on in-person dining. *See Santo's Italian Café*, 15 F.4th at 401. The court determined that proof of a tangible loss of property was necessary. *Id.* And because the appellant-insured could still make use of the property, even while in-person dining was suspended, it could not demonstrate a loss of property under the policy. *Id.*

The day after the *Santo's* opinion was issued, this Court directed the parties to submit additional briefing on whether the *Santo's* decision had any impact on the parties' dispute. ECF Non-Document Order, Sept. 23, 2021. Shortly thereafter, on September 29, 2021, the Sixth Circuit also issued an order in this matter, which granted Zurich's petition for leave to appeal and vacated the Court's summary judgment rulings on Counts I and III. ECF Doc. 23 at 1-3. The Sixth Circuit remanded the matter for further proceedings consistent with the *Santo's* decision. *Id.* at 3.

On October 8, 2021, Plaintiffs filed a supplemental brief contending that the *Santo's* decision is distinguishable because the Sixth Circuit's definition of "direct physical loss of [] property" is inconsistent with the terms of the instant Policy. ECF Doc. 24. Zurich's response brief contends that, because the language in the *Santo's* policy is the same as the instant Policy, the *Santo's* decision controls the outcome of this matter. ECF Doc. 27. Plaintiffs' reply asserts that *Santo's* is inapposite because Plaintiffs suffered a direct physical loss of their intangible property.

ECF Doc. 28. The Court now considers this supplemental briefing, together with the parties' prior summary judgment briefing, to determine whether *Santo's* alters the outcome of this case.

## STANDARD OF REVIEW

Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing that there is no material issue in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Here, the parties have filed cross-motions for summary judgment and agree that the Court must determine whether the language contained in Zurich's Policy is ambiguous as a matter of law. *See Potti v. Duramed Pharm., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991).

## ANALYSIS

The *Santo's* decision holds that the phrase "direct physical loss of or damage to property" in a commercial insurance contract does not cover the loss of *use* of a property caused by the COVID-19 bans on in-person dining. *Santo's Italian Café*, 15 F.4th at 402 ("A loss of use simply is not the same as a physical loss."). The Sixth Circuit reached this conclusion by employing the ordinary definitions of "direct physical loss" and "property" from the *Oxford English Dictionary Online* ("OED") because those terms were not defined in the insurance policy. *Id.* at 401. Then, after reviewing the OED's definitions, the court concluded that coverage for a "direct physical loss" of "property" required a showing that the insured had suffered a tangible and concrete deprivation of the property itself. *Id.* The appellant-insured in *Santo's* had not made this showing because, even when Ohio's in-person dining ban was in place, it still had access to the physical

restaurant property. Thus, it could make use of the property, even when it could not be used for its intended purpose of in-person dining. *Id.* at 401-02.

The precise policy language at issue in *Santo's* is identical to the Policy's language here. Accordingly, the Court must reconsider its prior ruling on the meaning of "direct physical loss of property" as it applies to Plaintiffs' insurance claim. As in *Santo's*, the Policy does not expressly define "direct physical loss of" or "property." And like the Sixth Circuit, this Court looked to the ordinary meaning of those word but came to different conclusion as to what they meant. However, because the same words were involved, the Sixth Circuit's interpretation controls. *Santo's*, thus, mandates that summary judgment be entered in favor of Zurich on Counts I and III.

Despite the identical language at issue both here and in *Santo's*, Plaintiffs identify two text-based arguments to support this Court's prior ruling in their favor. The first relates to how "property" should be defined under the Policy, and the second pertains to the definition of "period of restoration." For the following reasons, Plaintiffs' attempts to distinguish *Santo's* are unavailing.

A. **The Definition of "Property"**

Plaintiffs first argue that *Santo's* does not control because it involved a different definition of "property." The Sixth Circuit consulted *OED* to define policy terms, but here, the Policy directs that any disputed term must be defined using *Webster's*. ECF Doc. 24 at 2-3. Plaintiffs contend that this distinction is significant because *Webster's* definition of "property" includes "intangible property"—such as "the exclusive right to possess, enjoy, and dispose of a thing"—whereas the Sixth Circuit relied on *OED*'s more narrow definition of "property," which includes only physical property to the exclusion of any intangible right of possession. *Id.* Plaintiffs maintain that they have showed a "direct physical loss" under the *Webster's* definition because they "no longer

'possessed the ability to operate their restaurants" while the in-person dining bans were in place. ECF Doc. 28 at 3.

As an initial matter, Plaintiffs are factually incorrect that the *Webster's* definition of "property" provides them with a more expansive concept of property than does the *OED* definition. The *OED* provides seven different definitions for "property," and one of these definitions includes "the (exclusive) right to the possession . . . of a thing[.]" *See Property*, Oxford English Dictionary Online (3d ed. 2021). Contrary to Plaintiffs' argument, *Webster's* and *OED* have nearly identical definitions of "property." The Sixth Circuit simply chose a different definition of the word.

Despite the identical definitions in *Webster's* and *OED*, the Sixth Circuit excluded intangible rights of possession from coverage under the policy in *Santo's*. In doing so, the Sixth Circuit selected the definition of "property" it found most relevant to the policy at issue—*i.e.*, "any residential or other building (with or without associated land) or separately owned part of such building (as an apartment, etc.)," as well as "[s]omething belonging to a thing; an appurtenance; an adjunct." *Santo's Italian Café*, 15 F.4th at 401 (alterations in original). The Sixth Circuit excluded as irrelevant the other six OED definitions of property. This included the definition of property involving a right of possession. The Sixth Circuit determined that this intangible definition of property was not contemplated under the policy's endorsement for direct physical loss of property.

Regardless of which dictionary is consulted, *Santo's* makes clear that coverage for a "direct physical loss" of "property" applies only to physical property. This Court is constrained to apply the Sixth Circuit's definition of "property" to Plaintiffs' claim and reverse its prior ruling. The Santo's decision involved the same policy language. The Sixth Circuit has determined that this

language covers only the loss of physical property — not the loss of the *use* of the property for its original purpose.

After adopting the Sixth Circuit's definition of the policy language, as it must, the Court recognizes that Plaintiffs have not articulated how in-person dining bans resulted in a *physical* loss of their properties. Plaintiffs maintained at all times the right to possess the restaurants and were deprived only of the ability to use their properties for in-person dining. Plaintiffs continue to argue they lost the use of their property, and this is covered under their Policy. ECF Doc. 28 at 2. But *Santo's* dictates that "direct physical loss of" requires more than loss of use. As in *Santo's*, Plaintiffs remained in possession of their properties and could have put them to use for take-out dining. The fact that Plaintiffs elected not to make such use of the premises does not transform their loss of operations into a "direct physical loss" of property using the *Santo's* interpretation.

**B.    Definition of "Period of Restoration"**

Next, in support of their expansive reading of "property" and in an attempt to distinguish this case from *Santo's,* Plaintiffs also point to the Policy's definition of "period of restoration." Plaintiffs contend that the *Santo's* policy defined "period of restoration" as the time required to physically repair the premises at issue. *Santo's Italian Café*, 15 F.4th at 403. Here, Plaintiffs contend the Policy's "period of restoration" broadly includes the time it takes to make the premises "physically capable" of operation. ECF Doc. 28 at 4. Because the Policy's definition for "period of restoration" includes the time it takes to obtain building permits and operating licenses, Plaintiffs argue that the "period of restoration" must include the end of "the relevant governmental restrictions." *Id.*

However, Plaintiffs' interpretation of the "period of restoration" is unsupported by the text of the Policy. The Policy states that the "period of restoration" ends when the "the location had

been *restored* to the physical size, construction, configuration, location, and material specifications which would satisfy the minimum requirements necessary to obtain all required building permits, occupancy permits, operating licenses, or similar documents." ECF Doc. 12-1 at 94 (emphasis added). Thus, as in *Santo's*, the policy-defined "period of restoration" contemplates some physical alteration of the restaurant premises, something which did not occur.

Here, Plaintiffs' premises were not damaged or altered in any way by the COVID-19 pandemic. It follows that Plaintiffs were not required to make any improvements or alterations to the restaurant premises in order to resume in-person dining. In short, there was no restoration that needed to occur. Using Plaintiffs' interpretation of the "period of restoration" would be illogical because, according to them, the "period of restoration" could include no restoration whatsoever.

In sum, Plaintiffs' attempt to distinguish *Santo's* by pointing to the different language used to define "period of restoration" is unpersuasive. Even if the Policy's language is not identical to that of the policy at issue in *Santo's*, the outcome remains the same because the Policy contemplates physical improvements to the premises, which did not occur.

## CONCLUSION

Overall, the Court discerns no basis upon which *Santo's* is distinguishable from the undisputed facts presented here. The Sixth Circuit has made clear that mere loss of use is insufficient to trigger insurance coverage for "direct physical loss" of "property" under the ordinary meaning of those words. Based on the foregoing, the Court GRANTS Defendant's Motions for Summary Judgment with respect to Counts I and III. (ECF Doc. 14).

**IT IS SO ORDERED.**

*/s/ Dan Aaron Polster*
**Dan Aaron Polster**
**United States District Judge**